[No. B015557. Second Dist., Div. Seven. Aug. 8, 1986.]

RICKY D. GRACZYK, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CALIFORNIA
STATE UNIVERSITY, FULLERTON et al., Respondents.

**COUNSEL**

Tarlow & Tarlow and Mervin I. Tarlow for Petitioner.

Richard A. Krimen, Michael J. Brodie, Arthur Hershenson, Fernando Da Silva, Robert A. La Porta, Richard W. Younkin, William B. Donohoe, Alvin R. Barrett and Charles E. Finster for Respondents.

**OPINION**

**LILLIE, P. J.**—Petitioner Ricky D. Graczyk (applicant) seeks review of the decision of respondent Workers' Compensation Appeals Board (Board) that he was not an employee of respondent California State University, Fullerton (CSUF) when injured in a football game while he was a student at CSUF. We conclude that the Board correctly determined applicant was not an employee of CSUF.

Applicant allegedly sustained injuries to his head, neck and spine while playing varsity college football for CSUF on September 9, 1978, as well as in the period from August 7, 1977, through November 27, 1978.

Trial of his application was bifurcated, and the matter was submitted on the issue whether he was an employee of CSUF within the meaning of the statutory definition of employee (Lab. Code, §§ 3351, 3352).[1]

---

[1]All further section references are to the Labor Code unless otherwise noted.

The evidence established that applicant enrolled as a student at CSUF in the fall of 1977, following completion of high school. Football scouts from CSUF and two other universities recruited him; however, he chose CSUF because it was "close to my mom and the rest of my family." He commenced studies and playing football immediately upon enrollment.

Representatives of the CSUF football program encouraged applicant to apply for financial aid. During his first year as a student, he received financial aid, including a college opportunity grant of $1,100 a year from the state, a supplementary grant of approximately $800 from CSUF, and a student loan. Other than the student loan, the grants he received in the first year were based upon financial need and academic achievement, and were unrelated to athletic achievement.

In applicant's second year at CSUF, he received an athletic scholarship in the amount of $1,600 a year, payable in monthly installments. The athletic coach determined recipients of athletic scholarships based on athletic progress and value to the football team; and the scholarship funds were raised by alumni and business groups. Applicant had intended to continue playing on the football team even had he not received the athletic scholarship. The scholarship was for a full year and could not be terminated unless the recipient quit the team, dropped out of school, or failed to maintain academic standards. The scholarship was intended to meet costs of room and board, but there was no control over the manner in which the recipient spent it. Applicant understood that it was to be used for student expenses, and he so used it.

The workers' compensation judge found that applicant was an employee of CSUF, concluding in essence that he was an employee within the statutory definition of employee as interpreted in *Van Horn* v. *Industrial Acc. Com.* (1963) 219 Cal.App.2d 457 [33 Cal.Rptr. 169]; and that although section 3352, subdivision (k), excluding student athletes as employees, is constitutional, it was enacted in 1981 and could not properly be applied retroactively to deprive applicant of his vested right to employee status under the law existing at the time of his injury.

The Board granted reconsideration and found (in a two-to-one decision) that applicant was not an employee of CSUF. The Board's determination was based on interpretation of the "relevant statutes defining 'employee.'" Thus, the Board noted the general requirement (§ 3600) of the existence of "employment" as a prerequisite to workers' compensation coverage, as well as the general statutory definition of "employee" (§ 3351) and the statutory definition of persons excluded from the general definition of employee (§ 3352). The Board concluded that the Legislature's 1981 amendment of

section 3352, adding subsection (k) thereto and expressly declaring the amendment retroactive, could properly be applied retroactively to exclude applicant from the statutory definition of an employee entitled to benefits under the workers' compensation law.

The Board's dissenting panel member stated that he "would find that Labor Code Section 3352(k) may not constitutionally be applied to deprive applicant of a vested right."

In support of his contention that the Board erred in finding that he was not an employee of CSUF, applicant asserts he had a "vested right" in employee status under the law existing at the time of his injuries as established in *Van Horn* v. *Industrial Acc. Com., supra,* 219 Cal.App.2d 457, and hence he could not be deprived of it retroactively by the Legislature's 1981 amendment to section 3352.

■ " 'The retroactive operation of a civil statute is by no means unusual, and no constitutional objection exists to such operation save where a vested right, or the obligation of a contract, is impaired.' " (*Gordon H. Ball, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.* (1972) 26 Cal.App.3d 162, 168 [102 Cal.Rptr. 637], quoting from *McCann* v. *Jordan* (1933) 218 Cal. 577, 579 [24 P.2d 457].) To determine whether applicant had a vested right of action, we must look to the unique nature of the workers' compensation law in California.

■ California workers' compensation law (§ 3200 et seq.) is a statutory system enacted pursuant to constitutional grant of plenary power to the Legislature to establish a complete and exclusive system of workers' compensation. (Cal. Const., art. XIV, § 4; § 3201; 1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) § 1.1, pp. 12-13; 1 St. Clair, Cal. Workers' Compensation Law and Practice (3d ed. 1985) § 1.3, p. 2; 65 Cal.Jur.3d, Work Injury Compensation, §§ 1-2, pp. 20-23; Cal. Workers' Compensation Practice (Cont.Ed.Bar 1985) § 1.3, p. 4; see *Lowman* v. *Stafford* (1964) 226 Cal.App.2d 31, 36 [37 Cal.Rptr. 681].) It is "an expression of the police power" (§ 3201) and has been upheld as a valid exercise of the police power. (*Western Indemnity Co.* v. *Pillsbury* (1915) 170 Cal. 686 [151 P. 398]; *Pacific Employers Ins. Co.* v. *Industrial Acc. Com.* (1963) 219 Cal.App.2d 634 [33 Cal.Rptr. 442]; see *Alaska Packers Assn.* v. *Indus. Acc. Com.* (1934) 1 Cal.2d 250 [34 P.2d 716]; 1 Herlick, Cal. Workers' Compensation Law Handbook, *supra,* § 1.1, p. 13.)

■ The right to workers' compensation benefits is "wholly statutory" (*Johnson* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 964, 972 [88 Cal.Rptr. 202, 471 P.2d 1002]; *Ruiz* v. *Industrial Acc. Com.* (1955) 45

Cal.2d 409, 414 [289 P.2d 229]), and is not derived from common law. (*Carrigan* v. *California State Legislature* (1959) 263 F.2d 560, 567; *Coleman* v. *Silverberg Plumbing Co.* (1968) 263 Cal.App.2d 74, 84-85 [69 Cal.Rptr. 158]; see *Alaska Packers Assn.* v. *Indus. Acc. Com., supra,* 1 Cal.2d at p. 256; *Argonaut Mining Co.* v. *Ind. Acc. Com.* (1951) 104 Cal.App.2d 27, 29 [230 P.2d 637].)

■ This statutory right is exclusive of all other statutory and common law remedies, and substitutes a new system of rights and obligations for the common law rules governing liability of employers for injuries to their employees. (*Fitzpatrick* v. *Fidelity & Casualty Co.* (1936) 7 Cal.2d 230, 233 [60 P.2d 276]; *Alaska Packers Assn.* v. *Indus. Acc. Com.* (1927) 200 Cal. 579, 583 [253 P. 926]; see *Tipton* v. *Atchison Ry. Co.* (1935) 298 U.S. 141, 153-154 [80 L.Ed. 1091, 1098-1099, 56 S.Ct. 715, 104 A.L.R. 831]; *Hazelwerdt* v. *Industrial Indem. Exchange* (1958) 157 Cal.App.2d 759, 762 [321 P.2d 831].) ■ Rights, remedies and obligations rest on the status of the employer-employee relationship, rather than on contract or tort. (Cal. Workers' Compensation Practice (Cont.Ed.Bar 1985) § 1.3, p. 4; see *Alaska Packers Assn.* v. *Indus. Acc. Com., supra,* 1 Cal.2d at p. 256; *Deauville* v. *Hall* (1961) 188 Cal.App.2d 535, 539-540 [10 Cal.Rptr. 511]; *Argonaut Mining Co.* v. *Ind. Acc. Com., supra,* 104 Cal.App.2d at p. 29.)

In enacting the workers' compensation law as an expression of the police power pursuant to the constitutional grant of plenary power, the Legislature has defined employee status in sections 3351 and 3352.[2] In essence, section 3351 defines persons included in the definition of "employee," and section 3352 defines persons excluded therefrom.[3] An employee excluded from

---

[2]The Legislature has broad power and wide discretion in classifying employees as to compensation benefits; every presumption is in favor of validity of the statute; and the Legislature's decision as to sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond a rational doubt erroneous. (*Saal* v. *Workmen's Comp. Appeals Bd.* (1975) 50 Cal.App.3d 291, 300 [123 Cal.Rptr. 506]; see 58 Cal.Jur.3d, Statutes, § 14, p. 318.)

[3]Section 3351 provides: "'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and includes: [¶] (a) Aliens and minors. [¶] (b) All elected and appointed paid public officers. [¶] (c) All officers and members of boards of directors of quasi-public or private corporations while rendering actual service for the corporations for pay; provided that, where the officers and directors of the private corporation are the sole shareholders thereof, the corporation and the officers and directors shall come under the compensation provisions of this division only by election as provided in subdivision (a) of Section 4151. [¶] (d) Except as provided in subdivision (h) of Section 3352, any person employed by the owner or occupant of a residential dwelling whose duties are incidental to the ownership, maintenance, or use of the dwelling, including the care and supervision of children, or whose duties are personal and not in the course of the trade, business, profession, or occupation of the owner or occupant. [¶] (e) All persons incarcerated

compensation benefits under section 3352 retains his right to maintain a civil action for damages against his employer. (See 1 St. Clair, Cal. Workers' Compensation Law and Practice, *supra,* pp. 49-50.)

---

in a state penal or correctional institution while engaged in assigned work. [¶] (f) All working members of a partnership receiving wages irrespective of profits from the partnership; provided that where the working members of the partnership are general partners, the partnership and the partners shall come under the compensation provisions of this division only by election as provided in subdivision (a) of Section 4151. If a private corporation is a general partner, 'working members of a partnership' shall include the corporation and the officers and directors of the corporation, provided that the officers and directors are the sole shareholders of the corporation."

Section 3352 provides: "'Employee' excludes: [¶] (a) Any person defined in subdivision (d) of Section 3351 who is employed by his parent, spouse, or child. [¶] (b) Any person performing services in return for aid or sustenance only, received from any religious, charitable, or relief organization. [¶] (c) Any person holding an appointment as deputy clerk, deputy sheriff, or deputy constable appointed for his own convenience, and who receives no compensation from the county or municipal corporation or from the citizens thereof for his services as such deputy. This exclusion is operative only as to employment by the county or municipal corporation and does not deprive any person so deputized from recourse against a private person employing him for injury occurring in the course of and arising out of such employment. [¶] (d) Any person performing voluntary services at or for a recreational camp, hut or lodge operated by a nonprofit organization, exempt from federal income tax under Section 101(6) of the Internal Revenue Code, of which he or a member of his family is a member and who receives no compensation for such services other than meals, lodging or transportation. [¶] (e) Any person performing voluntary service as a ski patrolman who receives no compensation for such services other than meals or lodging or the use of ski tow or ski lift facilities. [¶] (f) Any person employed by a ski lift operator to work at a snow ski area who is relieved of and not performing any prescribed duties, while participating in recreational activities on his own initiative. [¶] (g) Any person, other than a regular employee, participating in sports or athletics who receives no compensation for such participation other than the use of athletic equipment, uniforms, transportation, travel, meals, lodgings, or other expenses incidental thereto. [¶] (h) Any person defined in subdivision (d) of Section 3351 who was employed by the employer to be held liable for less than 52 hours during the 90 calendar days immediately preceding the date of the injury for injuries as defined in Section 5411 or during the 90 calendar days immediately preceding the date of the last employment in an occupation exposing the employee to the hazards of such disease or injury for injuries as defined in Section 5412, or who earned less than one hundred dollars ($100) in wages from such employer during the 90 calendar days immediately preceding the date of the injury for injuries as defined in Section 5411 or during the 90 calendar days immediately preceding the date of the last employment in an occupation exposing the employee to the hazards of such disease or injury for injuries as defined in Section 5412. [¶] (i) Any person performing voluntary service for a public agency or a private, nonprofit organization who receives no remuneration for such services other than meals, transportation, lodging, or reimbursement for incidental expenses. [¶] (j) Any person, other than a regular employee, performing officiating services relating to amateur sporting events sponsored by any public agency or private, nonprofit organization, who receives no remuneration for these services other than a stipend for each day of service no greater than the amount established by the State Board of Control as a per diem expense for employees or officers of the state pursuant to Section 13920 of the Government Code. The stipend shall be presumed to cover incidental expenses involved in officiating, including, not not limited to, meals, transportation, lodging, rule books and courses, uniforms, and appropriate equipment. [¶] (k) Any student participating as an athlete in amateur sporting events sponsored by any public agency, public or private nonprofit college, university or school, who receives no remuneration for such participation other than the use of athletic equipment, uniforms, transportation, travel, meals, lodgings, scholarships, grants-in-aid, or other expenses incidental thereto."

In 1963, at the time of the decision in *Van Horn* v. *Industrial Acc. Com., supra,* 219 Cal.App.2d 457, the section 3352 exclusionary definition of employee did not refer to athletes among the occupational groups then excluded from employee status. *Van Horn* held that a student athlete who was killed in an airplane crash while returning to California with members of the college football team and college officials was an employee within the meaning of the section 3351 definition and the section 3357 presumption that any person rendering service for another, unless expressly excluded by statute, is presumed to be an employee. The *Van Horn* opinion made no reference to the section 3352 exclusionary statute.

Apparently in a response to the *Van Horn* decision (1 Herlick, Cal. Workers' Compensation Law Handbook, *supra,* § 2.11, pp. 30-31), the Legislature in 1965 amended section 3352, adding former subdivision (j) (presently subd. (g), see fn. 3, *ante*), which provides that "'Employee' excludes . . . [a]ny person, other than a regular employee, participating in sports or athletics who receives no compensation for such participation other than the use of athletic equipment, uniforms, transportation, travel, meals, lodgings, or other expenses incidental thereto." The 1965 amendment was "designed to clarify the position of those who sponsor athletic events or participants in various forms of athletics, [the exclusions being] predicated on the absence of the usual elements of the employment relationship." (1 Herlick, Cal. Workers' Compensation Law Handbook, *supra,* § 2.11, p. 30.)

In 1977-1978, applicant sustained the alleged injuries herein.

In 1981, the Legislature, again taking cognizance of the *Van Horn* decision (see fn. 4, *ante*), further amended section 3352, attempting to more specifically clarify the exclusion of athletic participants by adding present subdivision (k), which provides that "'Employee' excludes . . . [a]ny student participating as an athlete in amateur sporting events sponsored by any public agency, public or private nonprofit college, university or school, who receives no remuneration for such participation other than the use of athletic equipment, uniforms, transportation, travel, meals, lodgings, scholarships, grants-in-aid, or other expenses incidental thereto." The Legislature expressly declared the act "an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution" (Stats. 1981, ch. 21, § 13, p. 49), and stated that "The Legislature finds and declares that the provisions of law set forth in Sections 8, 9, and 10 of this act, which respectively amend Sections 3352 and 3852 of the Labor Code and add Section 3706.5 to the Labor Code, do not constitute a change in, but are declaratory of, the existing

law. These provisions shall apply to all claims filed for injuries occurring prior to the effective date of this act."[4] (Stats. 1981, ch. 22, § 12, p. 49.)

Since the 1963 *Van Horn* decision was based on section 3351 without any reference or determination as to section 3352, and since in 1965 the Legislature in response to the *Van Horn* decision and prior to the 1977-1978 date of applicant's injuries added former subdivision (j) clarifying the section 3352 exclusionary definition of athletes as employees, the law relating to employee status was in flux, and applicant did not at the time of his injury have a vested right in the *Van Horn* interpretation of the employee status statutes.

Moreover, applicant's inchoate right to benefits under the workers' compensation law is wholly statutory and had not been reduced to final judgment before the Legislature's 1981 addition of subdivision (k) further clarifying the employee status of athletes. Hence, applicant did not have a vested right, and his constitutional objection has no bearing on the issue. (See *Johnson* v. *Workmen's Comp. App. Bd., supra,* 2 Cal.3d at p. 972; *Ruiz* v. *Industrial Acc. Com., supra,* 45 Cal.2d at p. 414.) ■ Where a right of action does not exist at common law, but depends solely on statute, the repeal of the statute destroys the inchoate right unless it has been reduced

---

[4]An examination of the legislative history of the 1981 amendment to section 3352 reveals that it originated in Assembly Bill No. 44 which would exclude from workers' compensation coverage certain persons engaged in amateur athletic activities; that the bill "makes these exclusions retroactive, to apply to all existing workers' compensation claims, and states that the exclusions are to be declarative of previous legislative intent"; that the bill would "probably be interpreted as a change" in law; and that, in the opinion of the Legislative Counsel, the bill is constitutional. (Enrolled Bill Mem. to Governor (Apr. 16, 1981).) In analysis of Assembly Bill No. 44 by the Senate Industrial Relations Committee, it is stated: ". . . 2.) *Exclusion of Student Athletes* [¶] Existing law currently excludes from workers' compensation coverage any person, other than a regular employee, participating in sports or athletics who receives no compensation for such participation other than the use of athletic equipment, uniforms, transportation, travel, meals, lodging or other incidental expenses. If, however, an athlete is also receiving a scholarship or grant in aid in exchange for participation in athletics, as is common in colleges and universities, this exclusion would not apply, and such athletes may be covered if they otherwise meet the criteria for being an 'employee' for workers' compensation purposes. [¶] The State Fund, which insures public agencies for workers' compensation, reports that they periodically receive cases in which athletes claim to be 'employees.' In one case a football player was found to be an employee where the evidence showed he agreed to continue playing in exchange for an athletic scholarship. (*Van Horn* v. *IAC* 219 C.A. 2nd 457, 1963). [¶] *This bill* would specifically exclude from workers' compensation coverage student athletes participating in amateur sporting events sponsored by any public agency, public or nonprofit college, university or school provided no remuneration is received for such participation other than the use of athletic equipment, uniforms, transportation, travel, meals, lodging, scholarships, grants in aid, or other incidental expenses. This would basically expand the existing exclusion concerning athletes to include situations involving student athletes who are receiving scholarships or grants in aid. [¶] It is specified this is declaratory of existing law, though as noted above existing law has been construed to include a student athlete on scholarship in at least one case decided by the court of appeal. There are similar cases pending now."

to final judgment, or unless the repealing statute contains a saving clause protecting the right in pending litigation. (13 Cal.Jur.3d, Constitutional Law, § 275, p. 514; see *Governing Board* v. *Mann* (1977) 18 Cal.3d 819, 829 [135 Cal.Rptr. 526, 558 P.2d 1]; *Southern Service Co., Ltd.* v. *Los Angeles* (1940) 15 Cal.2d 1, 11-12 [97 P.2d 963]; *Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 170-171 [74 P.2d 252]; *Callet* v. *Alioto* (1930) 210 Cal. 65, 67 [290 P. 438]; *Freeman* v. *Glenn County Telephone Co.* (1920) 184 Cal. 508, 510 [194 P. 705]; *Frost* v. *State of California* (1966) 247 Cal.App.2d 378, 384-385 [55 Cal.Rptr. 652].) Because it is a creature of statute, the right of action exists only so far and in favor of such person as the legislative power may declare. (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 575 [139 Cal.Rptr. 97, 565 P.2d 122].)[5]

■ Thus, although the law in force at the time of the injury is determinative of a person's right to recovery of compensation benefits, this general rule is subject to circumstances where the legislative intent is to the contrary, provided that in making substantial changes which enlarge or diminish existing rights and obligations, the Legislature's intent to do so retroactively must be clear. (*Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 1028, 1031 [149 Cal.Rptr. 880], citing *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 392-393 [182 P.2d 159] and *State of California* v. *Ind. Acc. Com.* (1957) 48 Cal.2d 355, 361-363 [310 P.2d 1].) Here, the Legislature clearly stated its intent that its 1981 amendment to section 3352 further clarifying the statutory definition of employee status of athletes be retroactive. (Stats. 1981, ch. 21, § 12, p. 49; see *Travelers Ins. Co.* v. *Sierra Pacific Airlines* (1983) 149 Cal.App.3d 1144, 1150 [197 Cal.Rptr. 416].)

■ For the foregoing reasons, we conclude that applicant did not have a vested right in employee status at the time of his injury; and hence no constitutional objection exists to retroactive operation of the 1981 statute.

■ We also consider respondents' contention that irrespective of whether applicant's right be characterized as "vested" or "unvested," retroactivity of the Legislature's declaration that its 1981 statutory amendment to section 3352 be retroactive is justified by police power "policy factors." (See *Flournoy* v. *State of California* (1964) 230 Cal.App.2d 520, 534-537 [41 Cal.Rptr. 190].)

---

[5]The justification for the rule that a statutory right of action may be repealed is that all statutory remedies are pursued with full realization that the Legislature may abolish the right to recover at any time. (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 109 [145 Cal.Rptr. 674, 577 P.2d 1014]; *Governing Board* v. *Mann, supra,* 18 Cal.3d at p. 829; *Callet* v. *Alioto, supra,* 210 Cal. at pp. 67-68; 13 Cal.Jur.3d, *supra,* Constitutional Law, § 275, p. 515.)

■ "Vested rights are not immutable; the state, exercising its police power may impair such rights when considered reasonably necessary to protect the health, safety, morals and general welfare of the people." (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 760-761 [218 Cal.Rptr. 31, 705 P.2d 354]; see *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371].) Hence, the constitutional question, on principle, is not whether a vested right is impaired by a change of law, but whether such a change reasonably could be believed sufficiently necessary to the public welfare as to justify the impairment. (*Ibid.*)

■ In determining whether a given retroactive provision contravenes due process in impairing a vested right, certain policy factors are considered, such as "'the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions.'" (*In re Marriage of Buol, supra,* 39 Cal.3d at p. 761, quoting from *In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 592: see *Flournoy* v. *State of California, supra,* 230 Cal.App.2d at pp. 534-537.) Where retroactive application is necessary to subserve a sufficiently important state interest, the inquiry need proceed no further. (*In re Marriage of Buol, supra,* 39 Cal.3d at p. 761; *In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 593.)

In *Flournoy, supra,* 230 Cal.App.2d 520, the court weighed these policy factors, balanced the great public interest and the importance of its retroactive application against a right which had not been grievously impaired, and concluded that the legislative declaration of retroactivity was not unconstitutional.

■ Here, as previously indicated, the state has a significant, if not a compelling interest in defining the employer-employee status, such status in fact being the very cornerstone of the Legislature's enactment of a complete and exclusive workers' compensation system in exercise of its police power pursuant to the constitutional grant of plenary power. (Cal. Const., art. XIV, § 4; Lab. Code, §§ 3201, 3351, 3352, 3600; *Alaska Packers Assn.* v. *Indus. Acc. Com., supra,* 1 Cal.2d at p. 256; *Deauville* v. *Hall, supra,* 188 Cal.App.2d at pp. 539-540; *Argonaut Mining Co.* v. *Ind. Acc. Com., supra,* 104 Cal.App.2d at p. 29; Cal. Workers' Compensation Practice, *supra,* § 1.3, p. 4.) Retroactive application of the 1981 amendment to section 3352 clearly subserved this compelling state interest, as evidenced by the legislative history (fn. 4, *ante*) to effectuate that interest by clarifying the statutory definition excluding athletes as employees under the 1965

amendment to section 3352. Also, the 1981 amendment legitimately relied on the former law as set forth in section 3352.

Thus, all of the policy factors are in favor of the Legislature's declaration of retroactivity except the extent to which retroactive application would disrupt employee status rights of persons in applicant's position. As to disruption of such rights, we have noted that persons excluded from workers' compensation by the section 3352 exclusionary definition of employee retain their right to maintain a civil action for damages. In addition, the 1981 amendment to section 3352 was not "surprise legislation" in light of the existence of the 1965 amendment thereto excluding athletes as employees. (See *Flournoy* v. *State of California, supra,* 230 Cal.App.2d at pp. 536-537.) Thus, whatever right a person in applicant's position may have had when the Legislature further amended the athletic exclusion definition in 1981 was not "grievously impaired" (*id.,* at p. 537); and a weighing of the policy factors establishes that the legislative declaration of retroactivity (Stats. 1981, ch. 21, § 12, p. 49) is not unconstitutional.

The June 27, 1985, decision after reconsideration of respondent Workers' Compensation Appeals Board is affirmed.

Thompson, J., and Johnson, J., concurred.

Petitioner's application for review by the Supreme Court was denied October 23, 1986.