**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANGELOTTI CHIROPRACTIC, INC.; MOONEY & SHAMSBOD CHIROPRACTIC, INC.; CHRISTINA-ARANA & ASSOCIATES, INC.; JOYCE ALTMAN INTERPRETERS, INC.; SCANDOC IMAGING, INC.; BUENA VISTA MEDICAL SERVICES, INC.; DAVID H PAYNE M.D., INC., *Plaintiffs-Appellants*, | No. 13-56996 |
| | D.C. No. 8:13-cv-01139-GW-JEM |

v.

CHRISTINE BAKER, in her official capacity as Director of the California Department of Industrial Relations; RONNIE CAPLANE, in her official capacity as Chair of the Workers' Compensation Appeals Board; DESTIE LEE OVERPECK, in her official capacity as Acting Administrative Director of the California Division of Workers Compensation,
*Defendants-Appellees*.

ANGELOTTI CHIROPRACTIC, INC.;
MOONEY & SHAMSBOD
CHIROPRACTIC, INC.; JOYCE
ALTMAN INTERPRETERS, INC.;
SCANDOC IMAGING, INC.; BUENA
VISTA MEDICAL SERVICES, INC.;
DAVID H PAYNE M.D., INC.;
CHRISTINA-ARANA & ASSOCIATES,
INC.,

     *Plaintiffs-Appellees*,

v.

CHRISTINE BAKER, in her official
capacity as Director of the California
Department of Industrial Relations;
RONNIE CAPLANE, in her official
capacity as Chair of the Workers'
Compensation Appeals Board;
DESTIE LEE OVERPECK, in her
official capacity as Acting
Administrative Director of the
California Division of Workers
Compensation,

     *Defendants-Appellants*.

No. 13-57080

D.C. No.
8:13-cv-01139-
GW-JEM

OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted
November 18, 2014—Pasadena, California

Filed June 29, 2015

Before: Mary M. Schroeder and Jacqueline H. Nguyen, Circuit Judges and Jack Zouhary,[*] District Judge.

Opinion by Judge Nguyen

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's dismissal of plaintiffs' claims under the Takings Clause and Due Process Clause challenging California Senate Bill 863, vacated the district court's preliminary injunction and through pendent appellate jurisdiction, reversed the district court's denial of defendants' motion to dismiss plaintiffs' Equal Protection Clause claim.

In 2012, California enacted Senate Bill 863 to combat an acute "lien crisis" in its workers' compensation system. These liens are filed by medical providers and other vendors to seek payment for services provided to an injured worker with a pending claim. In an effort to clear an enormous and rapidly growing backlog of these liens, SB 863 imposes a $100 "activation fee" on entities like plaintiffs for each

[*] The Honorable Jack Zouhary, District Judge for the U.S. District Court for the Northern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

workers' compensation lien filed prior to January 1, 2013. Plaintiffs sued, claiming that SB 863 violates the Takings Clause, the Due Process Clause, and the Equal Protection Clause of the United States Constitution.

The panel held that the district court properly dismissed the Takings Clause claim because the economic impact of SB 863 and its interference with plaintiffs' expectations was not sufficiently severe to constitute a taking. The panel further concluded that the lien activation fee did not burden any substantive due process right to court access and also rejected plaintiffs' claim that the retroactive nature of the lien activation fee violated the Due Process Clause.

Vacating the district court's preliminary injunction, the panel held that the district court abused its discretion in finding that a "serious question" existed as to the merits of plaintiffs' Equal Protection claim. Applying rational basis review, the panel held that Labor Code § 4903.06(b), which exempts certain entities other than plaintiffs from having to pay the lien activation fee, was rationally related to the goal of clearing the lien backlog. The panel also reversed the district court's denial of defendants' motion to dismiss the Equal Protection Clause claim because the panel's ruling on the preliminary injunction necessarily resolved the motion to dismiss.

**COUNSEL**

Donna M. Dean (argued), Deputy Attorney General, Joel A. Davis, Supervising Deputy Attorney General, Kristin G. Hogue, Senior Assistant Attorney General, Kathleen A. Kenealy, Chief Assistant Attorney General, and Kamala D. Harris, Attorney General of California, Los Angeles, California, for Defendants-Appellants & Cross-Appellees.

Glenn E. Summers (argued), Sundeep K. Addy, and Daniel C. Taylor, Bartlit Beck Herman Palenchar & Scott LLP, Denver, Colorado; Paul Murphy and Mark Nagle, Murphy Rosen LLP, Santa Monica, California, for Plaintiffs-Appellees & Cross-Appellants.

Nicholas P. Roxborough and Anne S. Kelson, Roxborough, Pomerance, Nye, & Adreani, LLP, Woodland Hills, California, for Amicus Curiae California Society of Industrial Medicine and Surgery.

Michael A. Marks, Allweiss & McMurtry, Tarzana, California, for Amicus Curiae California Workers' Compensation Institute & American Insurance Association.

Ellen Sims Langille and Katherine F. Theofel, Finnegan, Marks, Theofel & Desmond, San Francisco, California, for Amicus Curiae California Chamber of Commerce.

Eric S. Boorstin (argued) and Jeremy B. Rosen, Horvitz & Levy LLP, Encino, California, for Amicus Curiae State Compensation Insurance Fund.

## OPINION

NGUYEN, Circuit Judge:

In 2012, California enacted Senate Bill 863 ("SB 863") to combat an acute "lien crisis" in its workers' compensation system. These liens are filed by medical providers and other vendors to seek payment for services provided to an injured worker with a pending claim. In an effort to clear an enormous and rapidly growing backlog of these liens, SB 863 imposes a $100 "activation fee" on entities like plaintiffs for each workers' compensation lien filed prior to January 1, 2013. Plaintiffs sued, claiming that SB 863 violates the Takings Clause, the Due Process Clause, and the Equal Protection Clause of the United States Constitution.

We affirm the district court's dismissal of plaintiffs' claims under the Takings Clause and Due Process Clause. As to the Equal Protection claim, however, we vacate the preliminary injunction and, through pendent appellate jurisdiction, reverse the district court's denial of the motion to dismiss this claim.

## BACKGROUND

### A.  Overview of the Workers' Compensation System

Employers in California typically provide medical care and other services to employees for work-related injuries. *See generally* Cal. Lab. Code §§ 3600, et seq. An employer or its workers' compensation insurer may choose to provide medical care to workers through the employer's Medical Provider Network ("MPN"), 2 Witkin, *Summ. Cal. Law*, Work. Comp. § 262 (10th ed. 2005), its Health Care

Organization ("HCO"), Cal. Lab. Code § 4600.3, or neither of these. An MPN is a group of health care providers selected by an employer or insurer to treat injured workers, and an HCO is a managed care organization that contracts with an employer to provide managed medical care.

In certain cases, an employer or its insurer might decline to provide medical treatment to an injured employee on the grounds that an injury is not work-related or the treatment is not medically necessary. An injured worker may then seek medical treatment on his or her own, and, if the injury is later deemed work-related and the treatment medically necessary, the employer is liable for the "reasonable expense" incurred in providing treatment, which may include ancillary services such as an interpreter to facilitate treatment. Cal. Lab. Code § 4600(a), (f); 2 Witkin, *Summ. Cal. Law*, Work. Comp. § 264; *Guitron v. Santa Fe Extruders*, 76 Cal. Comp. Cases 228, at *9 (WCAB 2011). An employer also may be liable for "medical-legal expenses" necessary "for the purpose of proving or disproving a contested claim" for workers' compensation benefits, such as diagnostic tests, lab fees, and medical opinions. Cal. Lab. Code § 4620(a).

A provider of services—whether for medical treatment, ancillary services, or medical-legal services—may not seek payment directly from the injured worker. *Id.* § 3751(b). Nor may a provider seek payment through the filing of a civil action against the employer or its insurer. *Vacanti v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 815 (2001) ("[C]laims seeking compensation for services rendered to an employee in connection with his or her workers' compensation claim fall under the exclusive jurisdiction of the [Workers' Compensation Appeals Board]."). Instead, these providers may seek compensation by filing a lien in the injured

employee's workers' compensation case. *See generally* Rassp & Herlick, *Cal. Workers' Comp. Law* ch. 17 (Lexis 2014). The filing of a lien entitles a provider to participate in the workers' compensation proceeding in order to protect its interests. *Id.* § 17:111[5]. After the underlying workers' compensation case is adjudicated, a "lien conference" is held to discuss the liens that have not already been resolved through settlement. *Id.* § 17:113. Any issues not resolved at the lien conference will be set for a "lien trial." *Id.*

Whether a provider of medical or ancillary services obtains payment on its lien depends on the result reached in the underlying case. These providers are entitled to payment of their liens if the injured worker establishes that the injury was work-related and that the medical treatment provided was "reasonably required to cure or relieve the injured worker from the effects of his or her injury." Cal. Lab. Code § 4600; *see also id.* § 4903.

Providers of medical-legal services must demonstrate that the expense was "reasonably, actually, and necessarily incurred," Cal. Labor Code § 4621, "for the purpose of proving or disproving a contested" workers' compensation claim, Rassp & Herlick § 17.70[1](c) (quoting Cal. Lab. Code § 4620(a)). Medical-legal lien claimants may still obtain payment even if the injured worker does not prevail in the underlying workers' compensation proceeding, provided that the medical-legal expenses are "credible and valid." *Id*.

## B. The Lien Crisis and SB 863

The parties do not dispute that California's workers' compensation system is overwhelmed by liens, with a substantial backlog that is growing rapidly. On September

18, 2012, California enacted SB 863, which aims to address the "lien crisis," described in a January 5, 2011 report prepared by the California Commission on Health and Safety and Workers' Compensation ("Commission Report"). The Commission Report noted that the workers' compensation courts lacked "the capacity to handle all the lien disputes" that were filed. For example, the Los Angeles Office of the Workers' Compensation Appeals Board devotes 35 percent of its time to lien-related matters, and even though it resolves liens at the rate of approximately 2,000 per month as of October 2010, the rate of filings is such that the backlog of unresolved liens grows by approximately 2,000 per month, on top of the pre-existing backlog of 800,000. According to the Commission Report, the backlog has two effects. First, frivolous liens remain pending for years rather than being denied outright, resulting in the employer paying to settle just to close the case. Second, meritorious liens are delayed, which means that employers can deny these claims with impunity for years. One of the reforms recommended by the Commission Report is the institution of a lien filing fee in order to deter the filing of liens generally, and particularly to deter the filing of frivolous liens.

SB 863 imposes a $150 filing fee for all liens filed on or after January 1, 2013. Cal. Lab. Code § 4903.05(c)(1). Plaintiffs do not challenge the filing fee in this action. More pertinently, SB 863 imposes a $100 "activation fee" for pending liens filed prior to January 1, 2013, which must be paid at the time that a declaration of readiness is filed for a lien conference. *Id.* § 4903.06(a)(1), (2). Any lien for which the activation fee is not paid by January 1, 2014, is "dismissed by operation of law." *Id.* § 4903.06(a)(5). The purpose of these fees, according to a report of the State Assembly's Committee on Insurance, is to "provide a

disincentive to file frivolous liens." The lien activation fee provision exempts the following entities:

> a health care service plan licensed pursuant to Section 1349 of the Health and Safety Code, a group disability insurer under a policy issued in this state pursuant to the provisions of Section 10270.5 of the Insurance Code, a self-insured employee welfare benefit plan, as defined in Section 10121 of the Insurance Code, that is issued in this state, a Taft-Hartley health and welfare fund, or a publicly funded program providing medical benefits on a nonindustrial basis.

*Id.* § 4903.06(b).

A lien claimant may recover reimbursement for the activation fee by taking the following steps: first, 30 or more days prior to filing a lien or a declaration of readiness for a lien conference, the lien claimant must make a "written demand for settlement of the lien claim for a clearly stated sum;" second, the defendant (i.e., the entity owing on the lien) must fail to accept the settlement within 20 days of receipt of the settlement demand; and third, after submission of the lien dispute to an arbitrator or the Workers' Compensation Appeals Board, "a final award is made in favor of the lien claimant of a specified sum that is equal to or greater than the amount of the settlement demand." Cal. Lab. Code § 4903.07(a). This section does not preclude reimbursement of the activation fee pursuant to "the express terms of an agreed disposition of a lien dispute." *Id.* § 4903.07(b).

## C.  The Present Action

Plaintiffs sued various state officials and agencies[1] asserting claims for violations of the Takings Clause, the Due Process Clause, and the Equal Protection Clause of the United States Constitution.[2]  Plaintiffs filed a motion for a preliminary injunction, and defendants moved to dismiss plaintiffs' complaint for failure to state a claim.  After hearing argument and issuing multiple written tentative rulings, the district court dismissed plaintiffs' Due Process and Takings claims without leave to amend and entered final judgment as to those claims pursuant to Federal Rule of Civil Procedure 54(b).  The court denied defendants' motion to dismiss the Equal Protection claim.  The court also issued a preliminary injunction in plaintiffs' favor as to the Equal Protection claim, but not as to the other claims.  Defendants appeal the district court's issuance of the preliminary injunction and its denial of the motion to dismiss the Equal Protection claim.  Plaintiffs cross-appeal as to the dismissal of their Takings and Due Process claims.

---

[1] The plaintiffs are Angelotti Chiropractic, Inc., Mooney & Shamsbod Chiropractic, Inc., Christina-Arana & Associates, Inc., Joyce Altman Interpreters, Inc., Scandoc Imaging, Inc., Buena Vista Medical Services, Inc., and David H. Payne, M.D., Inc.  Defendants are Christine Baker, in her official capacity as the Director of the California Department of Industrial Relations, Ronnie Caplane, in her official capacity as Chair of the Workers' Compensation Appeals Board, and Destie Lee Overpeck, in her official capacity as Acting Administrative Director of the California Division of Worker' Compensation.

[2] Plaintiffs also assert a stand-alone claim under 42 U.S.C. § 1983.  In the district court and on appeal, the parties do not address this claim.  We follow their lead.

**JURISDICTION AND STANDARD OF REVIEW**

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over the district court's order dismissing the Takings and Due Process claims pursuant to 28 U.S.C. §§ 1291, as a result of the district court's certification pursuant to Federal Rule of Civil Procedure 54(b). *See, e.g.*, *Ariz. State Carpenters Pension Trust Fund v. Miller*, 938 F.2d 1038, 1039–40 (9th Cir. 1991). We have jurisdiction over the district court's preliminary injunction order pursuant to 28 U.S.C. § 1292(a)(1), and we have pendent appellate jurisdiction over the district court's denial of defendants' motion to dismiss the Equal Protection claim. *See Arc of Cal. v. Douglas*, 757 F.3d 975, 993 (9th Cir. 2014).

We review de novo the district court's dismissal of the Takings and Due Process claims and accept factual allegations in the complaint as true. *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1156 n.2, 1158 (9th Cir. 2014). We review the district court's decision to grant a preliminary injunction for abuse of discretion. *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). In conducting that review, we consider whether plaintiffs are "likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief," whether "the balance of equities tips in [their favor]," and whether "an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)). "Serious questions going to the merits and hardship balance that tips sharply towards [plaintiffs] can [also] support issuance of a[] [preliminary] injunction," so long as there is a likelihood of irreparable injury and the injunction is in the public interest." *Id.* at 1132 (internal quotation marks omitted).

## DISCUSSION

Plaintiffs challenge the district court's dismissal of their Takings and Due Process claims.    On cross-appeal, defendants challenge the district court's issuance of the preliminary injunction on the Equal Protection claim. Defendants also argue that the court erred in denying their motion to dismiss the Equal Protection claim.  We address each claim in turn.

## A.  Takings

Plaintiffs contend that the lien activation fee violates the Takings Clause of the Fifth Amendment, which prohibits the taking of private property "for public use, without just compensation." U.S. Const. amend. V.  The Takings Clause protects property interests created by independent sources such as state law, but does not itself create property interests. *Bowers v. Whitman*, 671 F.3d 905, 912–14 (9th Cir. 2012). The property interest must be "vested."  In other words, "if the property interest is 'contingent and uncertain' or the receipt of the interest is 'speculative' or 'discretionary,' then the government's modification or removal of the interest will not constitute a . . . taking." *Id.* (citing *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1002–04 (9th Cir. 2007)).

Here, the workers' compensation liens are not property interests protected by the Takings Clause.  First, the right to workers' compensation benefits is "wholly statutory," and such rights are not vested until they are "reduced to final judgment."   *Graczyk v. Workers' Comp. Appeals Bd.*, 184 Cal. App. 3d 997, 1006 (1986).  In *Graczyk*, plaintiff Ricky Graczyk, a varsity football player at California State University, Fullerton ("CSUF"), sustained a series of head,

neck, and spine injuries in 1977 and 1978. *Id.* at 1000. Graczyk sought workers' compensation benefits from CSUF on the grounds that his status as a student athlete qualified him as an employee of CSUF within the definition of the California Labor Code. *Id.* A workers' compensation judge agreed, and found Graczyk eligible for workers' compensation benefits. *Id.* at 1001. While the judge acknowledged that, in 1981, the Legislature expressly excluded student athletes from the definition of "employee," the judge nevertheless found that the new definition could not be applied retroactively to "deprive [Graczyk] of his vested right to employee status under the law existing at the time of his injury." *Id.*

The Workers' Compensation Appeals Board reversed, and the Court of Appeal affirmed. *Id.* at 1001–09. The court reasoned that Graczyk's "inchoate right to benefits under the workers' compensation law is wholly statutory and had not been reduced to final judgment before the [1981 amendment]. Hence, [Graczyk] did not have a vested right . . . ." *Id.* at 1006. The court explained that, "[w]here a right of action does not exist at common law, but depends solely on statute, the repeal of the statute destroys the inchoate right unless it has been reduced to final judgment." *Id.* at 1006–07; *see also Beverly Hilton Hotel v. Workers' Comp. Appeals Bd.*, 176 Cal. App. 4th 1597, 1605 (2009) (citing *Graczyk* for the proposition that "[w]orkers' compensation awards may become null by subsequent legislation enacted prior to a final judgment"); *S. Coast Regional Comm'n v. Gordon*, 84 Cal. App. 3d 612, 619 (1978) (noting that "a statutory remedy does not vest until final judgment since it has been held in a long line of cases that the repeal of a statute creating a penalty, running to either an individual or the state, at any

time before final judgment, extinguishes the right to recover the penalty" (internal quotation marks omitted)).

Since an injured workers' right to benefits does not vest until final judgment, the same is true for the liens at issue here, which are derivative of the underlying workers' compensation claim. *See Perrillo v. Picco & Presley*, 157 Cal. App. 4th 914, 929 (2007) (noting that a lien claimant's rights to medical-legal costs are "derivative" of the injured worker's rights). Medical and ancillary lienholders have the right to recover on the lien only upon a determination that the expense was "reasonably required to cure or relieve the injured worker from the effects of his or her injury." Cal. Lab. Code § 4600. Similarly, medical-legal lien claimants must also demonstrate that an expense is "incurred . . . for the purpose of proving or disproving a contested" workers' compensation claim, even if the injured worker does not prevail in the underlying claim. Rassp & Herlick § 17.70[1](c) (quoting Cal. Lab. Code § 4620(a)). Thus, because the right to workers' compensation benefits does not vest until reduced to a final judgment, it would be illogical to reach a different conclusion as to the liens.

Plaintiffs' reliance on *In re Aircrash in Bali, Indonesia on April 22, 1974*, 684 F.2d 1301, 1312 (9th Cir. 1982), is unpersuasive. There, the claim for compensation at issue was a jury verdict for damages, *id.* at 1304, and even though it was not reduced to a final judgment because it was still pending on appeal, *id.*, a jury award is substantially more final than a pending workers' compensation lien, which is derivative of rights yet to be adjudicated at all. Plaintiffs also cite several Supreme Court cases that have identified liens as property protected by the Takings Clause. These cases do not help plaintiffs because they address liens secured by a

specific piece of property. *See Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 573–75 (1935) (mortgage lien secured by 170 acre farm); *Armstrong v. United States*, 364 U.S. 40, 41 (1960) (lien secured by boat hulls); *United States v. Sec. Indus. Bank*, 459 U.S. 70, 71–72 (1982) (lien secured by interest in household furnishings). Here, by contrast, the liens are unsecured, and act as a placeholder for the possibility of a future recovery in a lien trial following the adjudication of the underlying workers' compensation claim.

Finally, plaintiffs argue that the lien activation fee constitutes a taking of the services that they have already provided to injured workers because the fee requires them to pay large sums of money ($100, many times over) to save their liens from dismissal. As the district court properly found, the services were provided to the injured workers, not the state, and were provided before the enactment of SB 863, and thus could not have been "taken" by that legislation. While we agree that "an unreasonable amount of required uncompensated service" might qualify as a taking, *Family Div. Trial Lawyers of Sup. Ct.-D.C., Inc. v. Moultrie*, 725 F.2d 695, 705–06 (D.C. Cir. 1984), plaintiffs here were never under any compulsion to provide services. Rather, they rendered these services freely, with the expectation that they might be compensated through the lien system. Provided that the activation fee is paid, SB 863 does not affect plaintiffs' ability to obtain payment on outstanding liens. Moreover, by using the offer of settlement procedure set forth in Labor Code § 4903.07(a), plaintiffs can preserve the possibility of obtaining reimbursement of the fee. Under these circumstances, we conclude that the district court properly dismissed the Takings claim because the economic impact of SB 863 and its interference with plaintiffs' expectations is not sufficiently severe to constitute a taking. *Cf. Managed*

*Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1252 (9th Cir. 2013) (holding that change in Medicaid reimbursement rates did not give rise to a Takings claim because medical provider participation in the program is voluntary).

## B. Due Process

We next turn to plaintiffs' claim that the lien activation fee violates their due process rights. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

Plaintiffs argue that the lien activation fee provisions burden their substantive due process right of access to the courts, as set forth in *Boddie v. Connecticut*, 401 U.S. 371 (1971), and *Payne v. Superior Court*, 553 P.2d 565 (Cal. 1976). In *Boddie*, the Supreme Court struck down a filing fee that prevented indigent litigants from obtaining a divorce. 401 U.S. at 380–82. The Court reasoned that court proceedings were "the sole means in Connecticut for obtaining a divorce," *id.* at 380, and noted the "basic importance" of marriage in society, *id.* at 376. In *Payne*, the California Supreme Court held that a prisoner had a due process right to attend, or at least meaningfully participate in, civil proceedings initiated against him despite his incarceration. 553 P.2d at 570–73. Citing *Boddie*, the California Court explained that "a defendant in a civil case seeks not merely the benefit of a statutory expectancy, but the protection of property he already owns or may own in the future." *Payne*, 553 P.2d at 571. Thus, the prisoner had been "[f]ormally thrust into the judicial process," and therefore had "no alternative to the court system to protect his interests." *Id.* at 572.

Here, by contrast, plaintiffs have not been "thrust" into the judicial process. *Cf. id.* Nor is formal adjudication of the lien the only way for plaintiffs to obtain payment, *cf. Boddie*, 401 U.S. at 380, since they are not barred from settling lien disputes out of court. Moreover, this case does not present a weighty societal concern on the level of the institution of marriage. *Cf. id.* The lien activation fee here is more akin to filing fees in conventional litigation scenarios, in which the Supreme Court has rejected due process challenges. *See United States v. Kras*, 409 U.S. 434, 443–46 (1973) (upholding bankruptcy filing fee because bankruptcy did not involve "fundamental interest" on the order of marriage, and a debtor may resolve disputes with creditors through other avenues besides the courts); *Ortwein v. Schwab*, 410 U.S. 656, 659 (1973) (upholding filing fee for action challenging reduction in welfare payments because a pre–reduction hearing was provided, and the interest in welfare is of "far less constitutional significance than the interest of the *Boddie* appellants"); *see also Roller v. Gunn*, 107 F.3d 227, 233 (4th Cir. 1997) (explaining that filing fee for litigation by indigent prisoner merely "places the . . . prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state . . . [a prisoner] must weigh the importance of redress before resorting to the legal system"). For these reasons, we conclude that the lien activation fee does not burden any substantive due process right to court access.

We also reject plaintiffs' claim that the retroactive nature of the lien activation fee violates the Due Process Clause. While courts will presume that statutes are intended to operate prospectively, *Landgraf v. USI Film Products*, 511 U.S. 244, 265–73 (1994), and "stricter limits may apply to [a legislature's] authority when legislation operates in a retroactive manner," *Eastern Enters. v. Apfel*, 524 U.S. 498,

524 (1998) (plurality opinion), a statute that the legislature clearly intended to operate retroactively will be upheld if its retroactivity is "justified by a rational legislative purpose." *United States v. Carlton*, 512 U.S. 26, 31 (1994) (quoting *Pension Benefit Guaranty Corporation v. R.A. Gray & Co.*, 467 U.S. 717, 729–30 (1984)).

Here, there is no dispute that the California Legislature intended for the lien activation fee to operate retroactively. *See* Cal. Lab. Code § 4903.06(a) (requiring payment of activation fee for "[a]ny lien filed . . . prior to January 1, 2013"). And, as discussed below in our analysis of the Equal Protection claim, the lien activation fee provisions are "justified by [the] rational legislative purpose" of clearing the lien backlog. *See Carlton*, 512 U.S. at 31. We thus conclude that the retroactivity of the lien activation fee does not violate the Due Process Clause.

Plaintiffs' reliance on *Untermyer v. Anderson*, 276 U.S. 440 (1928) and *Nichols v. Coolidge*, 274 U.S. 531 (1927), is unpersuasive. In those cases, the Supreme Court invalidated taxes that operated retroactively. The Court recently cited those cases for the proposition that the retroactive application of a "wholly new tax" may be constitutionally problematic. *See Carlton*, 512 U.S. at 34. However, the Court also expressed skepticism as to the degree to which *Nichols* and *Untermyer* still apply, since "those cases were decided during an era characterized by exacting review of economic legislation under an approach that has long since been discarded." *Id.* (internal quotation marks omitted). The Court emphasized that the modern framework for evaluating retroactive taxation "'does not differ from the prohibition against arbitrary and irrational legislation' that applies generally to enactments in the sphere of economic policy."

*Id.* (quoting *Pension Benefit Guaranty Corp.*, 467 U.S. at 733). Thus, even assuming, without deciding, that the lien activation fee is analogous to a tax, its retroactive effect does not violate due process because its retroactivity is justified by a rational legislative purpose.

## C.  Equal Protection

Finally, we turn to defendants' claim that the district court abused its discretion in issuing a preliminary injunction on the ground that the lien activation fee violates the Equal Protection Clause, and that the court further erred in denying their motion to dismiss this same claim.

### 1.  Preliminary Injunction

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

Plaintiffs contend that Labor Code § 4903.06(b)'s exemption of certain entities other than plaintiffs from having to pay the lien activation fee violates the Equal Protection Clause. Plaintiffs also argue that strict scrutiny applies in evaluating the exemption because the activation fee trenches on a fundamental right of access to the courts. As an initial matter, we reject plaintiffs' argument that strict scrutiny applies because, as discussed above, the lien activation fee does not implicate any fundamental right. Moreover, it is well settled that equal protection challenges to economic legislation such as SB 863 are evaluated under rational basis review. *See, e.g.*, *FCC v. Beach Comm'cns, Inc.*, 508 U.S. 307, 313 (1993). We accordingly apply rational basis review

in considering whether Labor Code § 4903.06(b) violates the Equal Protection Clause.

Under rational basis review, legislation that does not draw a distinction along suspect lines such as race or gender passes muster under the Equal Protection Clause as long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Comm'cns, Inc.*, 508 U.S. 307, 313 (1993). Thus, a legislative classification must be upheld

> so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.

*Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (citations omitted); *see also Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2079–80 (2012).

Here, one "plausible policy" goal, *see Nordlinger*, 505 U.S. at 11, for the imposition of the lien activation fee is to help clear the lien backlog by forcing lienholders to consider whether a lien claim is sufficiently meritorious to justify spending $100 to save it from dismissal. In turn, the California Legislature's decision to impose the activation fee on entities like plaintiffs, while exempting other entities, is rationally related to the goal of clearing the backlog because the Legislature might have rationally concluded that the non-exempt entities are primarily responsible for the backlog. In

this regard, the Commission Report states that ten of the eleven top electronic lien filers are independent providers. Thus, the Legislature could have rationally found that independent service providers bore primary responsibility for the lien backlog, and therefore elected to focus on those entities in imposing the activation fee.

The Legislature's approach also is consistent with the principle that "the legislature must be allowed leeway to approach a perceived problem incrementally." *Beach Commc'ns*, 508 U.S. at 316; *see also Silver v. Silver*, 280 U.S. 117, 124 (1929) (stating that "[i]t is enough that the present statute strikes at the evil where it is felt and reaches the class of cases where it most frequently occurs."). Targeting the biggest contributors to the backlog—an approach that is both incremental, *see Beach Commc'ns*, 508 U.S. at 316, and focused on the group that "most frequently" files liens, *see Silver*, 280 U.S. at 124,—is certainly rationally related to a legitimate policy goal. Therefore, on this record, "the relationship of the classification to [the Legislature's] goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger*, 505 U.S. at 11.

Moreover, on rational basis review, the burden is on plaintiffs to negate "every conceivable basis" which might have supported the distinction between exempt and non-exempt entities. *See Armour*, 132 S. Ct. at 2080–81. The district court did not put plaintiffs to their burden of demonstrating a "likelihood" or "serious question" that they would be able to refute all rationales for this distinction and its relationship to the goal of clearing the backlog. *See Winter v. Natural Resources Def. Council*, 555 U.S. 7, 20 (2008); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). Rather, the district court

rejected defendants' argument that the activation fee was aimed at clearing the lien backlog, stating:

> the backlog is the backlog, and if clearing it is your purpose, then you attempt to clear it. It makes little sense to clear only part of it. The Court might also question the basis for the legislature's belief in its apparent conclusion that the exempted entities, in particular, are not major contributors to the backlog (and why other contributors who might also not be major contributors are not also exempted from the activation fee).

This reasoning runs contrary to *Beach Communications* and *Silver* because it denies the Legislature the leeway to tackle the lien backlog piecemeal, focusing first on a source of liens that it could have rationally viewed as the biggest contributor to the backlog. Also, the district court's skepticism of the notion that the exempted entities were not major contributors of the backlog ran afoul of the principle that "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *See Beach Commc'ns*, 508 U.S. at 315; *see also City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam) (stating that "rational [legislative] distinctions may be made with substantially less than mathematical exactitude").[3]

---

[3] Plaintiffs cite a portion of the oral argument transcript in the district court in which plaintiffs' counsel asserted, based on a public records request, that Kaiser Foundation Hospitals and Anthem Blue Cross, both exempt entities, rank at number six and number seven on a list of the state's largest lienholders. This assertion of counsel has no documentary

Finally, we are not persuaded by plaintiffs' reliance on *Lindsey v. Normet*, 405 U.S. 56, 77–80 (1972). In *Lindsey*, an Oregon statute required tenants wishing to appeal an order of eviction to file "an undertaking with two sureties for the payment of twice the rental value of the premises." *Id.* at 75–76. This amount would be forfeited by the tenant if the appeal was unsuccessful. *Id.* Oregon law imposed no such double surety requirement on any other litigants in any other civil proceedings. *Id.* The Supreme Court held that this requirement, imposed only on defendants appealing from eviction proceedings in which they did not prevail in the trial court, was arbitrary and irrational because no other appellant in Oregon was "subject to automatic assessment of unproved damages," the landlord was already protected by traditional appeal bond requirements, and the double-bond requirement did not operate to screen out frivolous appeals because it "not only bars nonfrivolous appeals by those who are unable to post the bond but also allows meritless appeals by others who can afford the bond." *Id.* at 78. The Court focused on the fact that "the discrimination against the poor, who could pay their rent pending an appeal but cannot post the double bond, is particularly obvious," and the traditional bond requirements were sufficient to protect the landlord's interests. *Id.* at 77–79. Indeed, *Lindsey* relies on a line of Supreme Court cases, including *Griffin v. Illinois*, 351 U.S. 12, 19 (1956) that looks with particular disfavor on laws that erect barriers to an indigent litigant's access to the appellate process. *See Lindsey*, 405 U.S. at 77 (citing cases). By contrast, this case does not present issues of indigency or

---

support in the record before us. And, even if it did, the fact that the distinction drawn by the Legislature is imperfect because it exempts some large lienholders will not render it invalid on rational basis review. *See Dukes*, 427 U.S. at 303.

discrimination against the poor, and thus *Lindsey* does not guide our analysis.

In sum, we conclude that the district court abused its discretion in finding that a "serious question" exists as to the merits of plaintiffs' Equal Protection claim.  In the absence of a "serious question" going to the merits of this claim, the preliminary injunction must be vacated.  *See Alliance for the Wild Rockies*, 632 F.3d at 1134–35.

### 2.   Motion to Dismiss

In addition to challenging the preliminary injunction, defendants seek reversal of the district court's denial of their motion to dismiss plaintiffs' Equal Protection claim because it is "inextricably intertwined" with the resolution of the court's ruling on the preliminary injunction.

Denial of a motion under Federal Rule of Civil Procedure 12(b)(6) is "generally . . . not a reviewable final order." *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998).  While an appellate court reviewing an appealable order may exercise pendent appellate jurisdiction over an otherwise non-appealable order, the two orders must be "inextricably intertwined." *Streit v. County of Los Angeles*, 236 F.3d 552, 559 (9th Cir. 2001).  In other words, the two orders must "raise the same issues, use the same legal reasoning, and reach the same conclusions." *Id.*  Two issues (or orders) are not "inextricably intertwined" if they are governed by different legal standards. *Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000).

"Although the standards for a motion for preliminary injunctive relief and dismissal under Rule 12(b)(6) are not

conterminous, they overlap where a court determines that the plaintiff has no chance of success on the merits." *Arc of Cal. v. Douglas*, 757 F.3d 975, 993 (9th Cir. 2014) (exercising pendent appellate jurisdiction over dismissal under Rule 12(b)(6) where the district court ordered dismissal "for the selfsame reason" that it denied a preliminary injunction). This is so because a complaint cannot state a plausible claim for relief if there is "no chance of success on the merits." *Id.* (quoting *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006)). Here, our conclusion that the exemption provision is rationally related to the purpose of clearing the lien backlog amounts to a determination that plaintiffs have no chance of success on the merits because, regardless of what facts plaintiffs might prove during the course of litigation, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *See Beach Commc'ns*, 508 U.S. at 315. Thus, the presence in the Commission Report of evidence suggesting that non-exempt entities are the biggest contributors to the backlog is sufficient to eliminate any chance of plaintiffs succeeding on the merits. Accordingly, we exercise pendent appellate jurisdiction over the district court's denial of the motion to dismiss, and reverse.

## CONCLUSION

The district court properly dismissed plaintiffs' Takings and Due Process claims. We likewise conclude dismissal without leave to amend is proper because "it is clear, upon de novo review, that the [claims] could not be saved by . . . amendment." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998). However, because the district court abused its discretion in concluding that "serious

questions" exist as to the merits of plaintiffs' Equal Protection claim, we vacate the preliminary injunction. We also reverse the district court's denial of defendants' motion to dismiss the Equal Protection claim because our ruling on the preliminary injunction necessarily resolves the motion to dismiss.

**AFFIRMED in part, VACATED in part, and REVERSED in part.**

Costs are awarded to defendants.