Filed 4/20/16 Unmodified opinion attached

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| ROBIN CHORN et al., | B264440 |
| Petitioners, | (Los Angeles County Super. Ct. No. BC528190) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD et al., | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Respondents; | |
| KAMALA HARRIS, et al., | [NO CHANGE IN JUDGMENT] |
| Real Parties in Interest. | |


THE COURT:

It is ordered that the opinion filed herein on March 28, 2016, be modified as follows:

1.     On the caption page , delete line 5, "No appearance for Respondents."

2.     On page 3, add the following to the beginning of the second full paragraph that begins "Employers and" so that the paragraph now begins:

Employers are obligated to provide medical, surgical, chiropractic, acupuncture, and hospital treatment that is reasonably required to cure or relieve an injured worker from the effects of his or her injury.  (§ 4600, subd. (a).)  "Upon notice of the injury, the

employer must specifically instruct the employee what to do and whom to see, and if the employer fails or refuses to do so, then he loses the right to control the employee's medical care and becomes liable for the reasonable value of self-procured medical treatment." (*Braewood Convalescent Hospital v. Workers' Compensation Appeals Board* (1983) 34 Cal.3d 159, 165.)

The petition for rehearing is denied.


_____
EPSTEIN, P. J.                          WILLHITE, J.                          COLLINS, J.

Filed 3/28/16 Unmodified opinion

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ROBIN CHORN et al., | B264440 |
| Petitioners, | (Los Angeles County |
| v. | Super. Ct. No. BC528190) |
| WORKERS' COMPENSATION APPEALS BOARD et al., | |
| Respondents; | |
| KAMALA HARRIS et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. William F. Highberger, Judge. The petition is dismissed as to petitioners Kalestian, Vounov, and Buie and denied as to petitioner Chorn.

Matthew D. Rifat for Petitioners.

No appearance for Respondents.

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Chief Assistant Attorney General, Kristin G. Hogue, Assistant Attorney General, Joel A. Davis and Donna M. Dean, Deputy Attorneys General for Respondent and Real Parties in Interest.

Physician Robin Chorn, M.D. and workers' compensation applicants Robert Kalestian, Tanya Vounov, and Latasha Buie have petitioned this court for a writ of mandate enjoining respondent Workers' Compensation Appeals Board (WCAB) from enforcing two recently enacted provisions of the Labor Code, sections 4903.05 and 4903.8.[1]  Petitioners contend that section 4903.05, which imposes a filing fee of $150 on certain medical liens filed in workers' compensation cases, deprives them of their state constitutional rights to due process (Cal. Const., art. I, § 7), equal protection (Cal. Const., art. I, § 9), and petition for redress of grievances (Cal. Const., art. I, § 3).  Petitioners claim that section 4903.8, which restricts payment of lien awards to individuals other than those who incurred the expenses, substantially impairs their constitutional right to contract.  (Cal. Const., art. I, § 9.)  Finally, they argue that both statutes contravene the constitutional mandate that workers' compensation laws "accomplish substantial justice in all cases expeditiously, inexpensively, and without any incumbrance of any character." (Cal. Const., art. XIV, § 4.)

We conclude that petitioners Kalestian, Vounov, and Buie lack standing to obtain the writ relief they request.  We further conclude that the challenged provisions of sections 4903.05 and 4903.8 do not violate any of the constitutional provisions identified in the petition.  We accordingly dismiss the petition as to petitioners Kalestian, Vounov, and Buie and deny the petition as to petitioner Chorn.

BACKGROUND

## I.     The Workers' Compensation System

"Article XIV, section 4 of the California Constitution gives the Legislature 'plenary power . . . to create, and enforce a complete system of workers' compensation.'" (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 810 (*Vacanti*).)  Pursuant to this authority, the Legislature enacted the Workers' Compensation Act, "a comprehensive statutory scheme governing compensation given to

_____

[1] All further statutory references are to the Labor Code unless otherwise indicated.

2

California employees for injuries incurred in the course and scope of their employment. (§ 3201 et seq.)" (*Ibid.*)

Under the workers' compensation statutes, "an employee injured in the workplace may request workers' compensation benefits by delivering a claim form to the employer within 30 days of the injury. [Citations.] Benefits include compensation for medical treatment and other services 'reasonably required to cure or relieve [the employee] from the effects of the injury.' [Citations.]" (*Vacanti, supra*, 24 Cal.4th at p. 810.) Employers or their workers' compensation insurers assume liability for these benefits owed to the employee. (*Ibid.*) This arrangement is in essence a "'compensation bargain.'" (*Id.* at p. 811.) "'[T]he employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.' [Citation.]" (*Ibid.*)

Employers and their insurers may establish or contract with a medical provider network to treat injured employees. (§§ 4600, subd. (c), 4616.) An injured employee may visit medical providers outside such networks only if the employer has not established a network or if the employee notified the employer in writing prior to the date of injury that he or she has a personal physician. (§ 4600, subds. (c), (d).) Medical providers submit itemized bills to the employer or its insurer, which generally has 60 days after receipt in which to pay. (*Vacanti*, *supra*, 24 Cal.4th at pp. 810-811; §§ 4603.2, subd.(b)(1), 4622.) If the employer or insurer contests a bill or portion thereof, the employer or insurer need not pay the contested portion until ordered to do so by the WCAB. (*Vacanti*, *supra*, 24 Cal.4th at p. 811; see §§ 4603.2, subd. (b), 4622, subd. (a).)

A medical provider whose bill is contested or otherwise unpaid generally may not seek payment from the employee. (§ 3751.) The provider may, however, file a lien claim for the costs of his or her services directly with the WCAB. (*Vacanti*, *supra*, 24 Cal.4th at p. 811; §§ 4903, 5300.) The filing of a lien claim renders the medical provider a party in interest to the WCAB proceedings and endows the provider with "full due

3

process rights, including an opportunity to be heard." (*Vacanti*, *supra*, 24 Cal.4th at p. 811.) "Because injured workers and their employers are often ready to resolve the worker's claim for indemnity before resolution of claims by lien claimants, the law grants a lien claimant an independent right to prove its claims in a separate proceeding. (Lab. Code, § 4903.4.)" (*California Insurance Guarantee Association v. Workers' Compensation Appeals Board* (2012) 203 Cal.App.4th 1328, 1343.) A lien claimant also may initiate an action if the injured worker does not pursue his or her own claim. (*Ibid.*; § 5501.)

## II.    Senate Bill 863 and the Contested Statutes

In 2012, the Legislature enacted Senate Bill 863 (SB 863) (2011-2012) to reform the lien claim system, among other things. (Stats. 2012, ch. 363, §§ 63, 70.) Respondent and real parties in interest, respectively, former and present Attorneys General, Edmund G. Brown [, Jr.] and Kamala D. Harris have made an unopposed request for judicial notice of some of the legislative history of SB 863, as well as a decision of the WCAB. We grant the request and take judicial notice of the proffered materials. (Evid. Code §§ 452, subds. (a) & (c), 459; see *In re J.W.* (2002) 29 Cal.4th 200, 211.)

The legislative history of SB 863 described the lien payment system as "out of control." (Sen. Rules Com., Off. of Senate Floor Analyses, analysis of Sen. Bill No. 863 (2011-2012 Reg. Sess.) as amended August 30, 2012, at p. 16.) The legislative analysis stated that "hundreds of thousands of backlogged liens, possibly in excess of a million" were clogging the workers' compensation system. (*Ibid.*) It described an environment in which courts were overwhelmed and "lien abuse" was common, where medical providers and third parties who purchased old receivables from medical providers commonly filed frivolous lien claims and used the delays in the system to leverage excessive settlements. (*Ibid.*) "To address this growing volume of problem liens," the analysis explained, SB 863 proposed "to re-enact a lien filing fee, so that potential filers of frivolous liens have a disincentive to file." (*Ibid.*) The analysis further stated that the filing fee would be refundable if the lien claimant prevailed. (*Id.* at pp. 16-17.)

4

The passage of SB 863 resulted in the enactment of several new workers' compensation statutes, two of which are pertinent here: sections 4903.05 and 4903.8.

Section 4903.05 provides in pertinent part: "(c) All liens filed on or after January 1, 2013, for expenses under subdivision (b) of Section 4903 or for claims of costs shall be subject to a filing fee as provided by this subdivision. [¶] (1) The lien claimant shall pay a filing fee of one hundred fifty dollars ($150) to the Division of Workers' Compensation prior to filing a lien and shall include proof that the filing fee has been paid. . . . [¶] (2) On or after January 1, 2013, a lien submitted for filing that does not comply with paragraph (1) shall be invalid, even if lodged with the appeals board, and shall not operate to preserve or extend any time limit for filing of the lien. [¶] . . . [¶] (7) No filing fee shall be required for a lien filed by a health care service plan licensed pursuant to Section 1349 of the Health and Safety Code, a group disability insurer under a policy issued in this state pursuant to the provisions of Section 10270.5 of the Insurance Code, a self-insured employee welfare benefit plan, as defined in Section 10121 of the Insurance Code, that is issued in this state, a Taft-Hartley health and welfare fund, or a publicly funded program providing medical benefits on a nonindustrial basis." (§ 4903.05, subds. (c)(1), (2) & (7).) Thus, effective January 1, 2013, certain medical providers must pay a fee of $150 to file their lien claims with the WCAB. The filing fees are used for the purposes of the Workers' Compensation Administration Revolving Fund (§ 4903.05, subd. (c)(4)), a special account in the State Treasury used in part for "the administration of the workers' compensation program" (§ 62.5, subd. (a)(1)(A)).

Section 4903.8 provides in pertinent part: "(a)(1) Any order or award for payment of a lien filed pursuant to subdivision (b) of Section 4903 shall be made for payment only to the person who was entitled to payment for the expenses as provided in subdivision (b) of Section 4903 at the time the expenses were incurred, and not to an assignee unless the person has ceased doing business in the capacity held at the time the expenses were incurred and has assigned all right, title, and interest in the remaining accounts receivable to the assignee. [¶] (2) Paragraph (1) does not apply to an assignment that was completed prior to January 1, 2013, or that was required by a contract that became

5

enforceable and irrevocable prior to January 1, 2013. This paragraph is declarative of existing law. [¶] . . . [¶] (e) A lien submitted for filing on or after January 1, 2013, for expenses provided in subdivision (b) of Section 4903, that does not comply with the requirements of this section shall be deemed to be invalid, whether or not accepted for filing by the appeals board, and shall not operate to preserve or extend any time limit for filing of the lien." (§ 4903.8, subds. (a) & (e).) The effect of section 4903.8 is to prohibit WCAB from ordering or awarding lien payments to anyone other than the medical provider who incurred the expense.

## III.    The Petition and Petitioners

The instant writ petition is an original proceeding in this court. Under section 5955, "[n]o court of this state, except the Supreme Court and the courts of appeal to the extent herein specified, has jurisdiction to review, reverse, correct, or annul any order, rule, decision, or award of the [Workers' Compensation] appeals board, or to suspend or delay the operation or execution thereof, or to restrain, enjoin, or interfere with the appeals board in the performance of its duties but a writ of mandate shall issue from the Supreme Court or a court of appeal in all proper cases." (§ 5955; see also *Greener v. Workers' Compensation Appeals Board* (1993) 6 Cal.4th 1028, 1042-1044.) Thus, there is no procedural history directly underlying this action.[2]

The factual record likewise is very limited. According to the petition, petitioner Chorn is a California licensed physician and surgeon who provides services to workers' compensation applicants. He provides care on a lien basis. He alleges that he "is adversely and irreparably harmed by the continued enforcement of portions of SB863 because the filing fee makes it cost prohibitive for him to file liens for services he has already rendered and for which he has not been paid." He further alleges he is "harmed because SB863's non-assignment provision has eliminated and destroyed the value of his

_____

[2] On our own motion, we take judicial notice that petitioner Chorn previously filed a lawsuit seeking to enjoin the enforcement of sections 4903.05, 4903.06, and 4903.8. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) The trial court dismissed the suit for lack of jurisdiction under section 5955, and we affirmed in an unpublished opinion. The instant petition challenges only sections 4903.05 and 4903.8.

6

accounts receivable by rendering them non-assignable." He claims that "[a]s a direct result of SB863," he is "left with significant accounts receivable that are too small individually to justify paying a filing fee for, and that he cannot assign a portion of to generate revenue to finance the filing fees for the larger outstanding accounts receivable."

In an accompanying declaration filed under penalty of perjury, Chorn elaborates on the allegations in the petition. He states that he has provided anesthesia medical services to workers' compensation applicants since 1995. Prior to the passage of SB 863, he submitted his bills for payment by workers' compensation insurers by filing liens with the WCAB. "Those bills were generally paid (although insurers routinely underpaid claims, ignored them or delayed payment) and [Chorn] relied on this mode of reimbursement in making decisions about what money to invest in [his] practice, what patients to see, and whether to see workers' compensation applicant patients." Now, however, even if an insurer agrees to pay or partially pays a bill, Chorn has to pay a fee to file his lien. The financial impact on Chorn has been "significant." He has "liens worth thousands of dollars" and does not have the "personal reserves" to pay the fees necessary to file them with the WCAB. Moreover, he is "unable to finance these sums in light of the current economic and lending environment and because SB 863 prevents [him] from assigning the accounts to secure financing." Consequently, he "and other providers are avoiding providing care on a lien basis for applicants who have otherwise been denied treatment by their employers or carriers."

Petitioners Kalestian, Vounov, and Buie allege they are California workers' compensation applicants who have "been denied medical care access as a consequence of SB863." They allege "they have been directly harmed by the 'reforms' of SB863 because they have been deprived of access to healthcare provided by medical providers who are not affiliated or aligned with workers' compensation insurers and who provide medical services on a lien basis." They further allege they "have therefore been deprived [of] free and unencumbered access to medical care to treat their injuries as guaranteed by the California Constitution." None of them has included a supplementary declaration.

7

**DISCUSSION**

Petitioners request that we issue writs of mandate (1) enjoining the WCAB "from requiring the payment of a lien filing fee consistent with section 4903.05," (2) enjoining the WCAB "from impairing the payment of assigned accounts receivable on account of the provisions of section 4903.8," and (3) "ordering the reinstatement of any lien claims dismissed as a consequence of their assignment." These requests are based on claims that sections 4903.05 and 4903.8 violate the California Constitution. Petitioners claim that both provisions violate the constitutional mandate that workers' compensation laws "accomplish substantial justice in all cases expeditiously, inexpensively, and without any incumbrance of any character." (Cal. Const., art. XIV, § 4.) They also challenge each provision individually. They contend that the fee provisions of section 4903.05 deprive them of due process (Cal. Const., art. I, § 7) and equal protection (Cal. Const., art. I, § 9) and infringe their right to petition for the redress of grievances (Cal. Const., art. I, § 3). With respect to section 4903.8, they argue that it substantially impairs their constitutional right to contract. (Cal. Const., art. I, § 9.) Respondent and real parties in interest refute these contentions and further assert that petitioners Kalestian, Vounov, and Buie lack standing to seek writs of mandate.

In evaluating petitioners' claims, we are mindful that "[a]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears." (*Lockheed Aircraft Corp. v. Superior Court of Los Angeles County* (1946) 28 Cal.2d 481, 484; see also *Stevens v. Workers' Compensation Appeals Board* (2015) 241 Cal.App.4th 1074, 1092 (*Stevens*).)

## I.      Standing

Respondent and real parties in interest contend that petitioners Kalestian, Vounov, and Buie lack standing to obtain the requested writs of mandate. We agree and dismiss the petition as to them.

8

"As a general rule, a party must be 'beneficially interested' to seek a writ of mandate. (Code Civ. Proc., § 1086.)" (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165.) "'The requirement that a petitioner be "beneficially interested" has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large. [Citations.]'" (*Ibid.*) The beneficial interest must be both direct and substantial. (*Ibid.*; see also *League of California Cities v. Superior Court* (2015) 241 Cal.App.4th 976, 985.) "Writ relief is not available if the petitioner gains no direct benefit from the writ's issuance, or suffers no direct detriment from its denial." (*League of California Cities*, *supra*, 241 Cal.App.4th at p. 985.)

Petitioners Kalestian, Vounov, and Buie lack a beneficial interest in the proceedings here. The statutes challenged in the petition, sections 4903.05 and 4903.8, are applicable to lien claimants like Chorn who participate in the workers' compensation system. They govern filing fees paid by such claimants (§ 4903.05) and assignment of liens by those claimants (§ 4903.8). Neither statute makes any mention of workers' compensation applicants or directly affects their rights under the workers' compensation scheme. The central premise of the "compensation bargain" underlying the workers' compensation scheme is that employees receive prompt treatment for workplace injuries at their employers' expense in exchange for forgoing potential tort remedies. (*Vacanti*, *supra*, 24 Cal.4th at p. 811.) Employees generally have minimal involvement in the financial aspects of the process. Indeed, a 2011 Liens Report prepared by the California Commission on Health and Safety and Workers' Compensation, of which we took judicial notice at respondent and real parties' request, recognized that "[t]he cost to workers" of liens is "indirect." (Cal. Com. on Health and Safety and Workers' Compensation, Liens Report (Jan. 5, 2011), The Scale of the Lien Problem, p. 8.) "'[O]ne will not be heard to attack a statute on grounds that are not shown to be applicable to himself and that [*sic*] a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of

9

constitutionality with reference to hypothetical situations.' [Citation.]" (*Longval v. Workers' Compensation Appeals Board* (1996) 51 Cal.App.4th 792, 802.)

Petitioners Kalestian, Vounov, and Buie contend they have a "real and direct interest in challenging constitutionally infirm provisions of law that are transparently intended to impair access to expeditious treatment of their workplace injuries." They claim that "the imposition of a lien filing fee that bears no connection to the value of the services rendered will make it less likely that medical providers will offer or render care to workers' compensation patients on a lien basis," and will "deprive injured workers of any choice as where [*sic*] they receive their care (if they receive care at all)," thereby "impairing the promise of unencumbered access to medical treatment of their injuries." But petitioners have not submitted any evidence in support of these claims or any details of their alleged injuries beyond the bare assertion that they have "been denied medical care access as a consequence of SB863." Moreover, they have not demonstrated that they are more affected than the "public at large" by the operation of sections 4903.05 and 4903.8, or that their constitutional challenges, if successful, would directly affect their rights.

The petition is dismissed as to petitioners Kalestian, Vounov, and Buie.

## II.    "Incumbrance"

Article XIV, section 4 of the California Constitution vests in the Legislature the "plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workers for injury or disability, and their dependents for death incurred or sustained by the said workers in the course of their employment, irrespective of the fault of any party." (Cal. Const., art. XIV, § 4.) Article XIV, section 4 further states that the "complete system of workers' compensation" it envisions includes, among other features, "full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, *to the end that the administration of such legislation shall*

10

*accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character.*"  (Cal. Const., art. XIV, § 4 (emphasis added).)

Petitioner Chorn contends sections 4903.05 and 4903.8 violate Article XIV, section 4 of the state Constitution  because they are "contrary to the power granted to the Legislature requiring that any workers' compensation law adopted 'accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character.'"  Respondents only address § 4903.05, however, and Chorn responds in kind by confining the discussion in his reply to section 4903.05 and the filing fee.  "While presenting his arguments with great force, petitioner cites little legal authority bearing on the precise constitutional challenges he mounts."  (*Facundo-Guerrero v. Workers' Compensation Appeals Board* (2008) 163 Cal.App.4th 640, 647 (*Facundo-Guerrero*).)  Instead, he asserts that section 4903.05 "improperly burdens workers' compensation applicants and their medical providers with filing fees which preclude the presentation of claims for reimbursement, resulting in an inability to receive necessary medical care."  Chorn similarly contends that section 4903.8 also burdens employers and medical providers "by taking away the right to enforce assigned medical accounts receivable and obtain recovery."  In his view, both statutes  place "the workers' compensation system's efficiencies on the backs of workers' compensation applicants and their medical providers," thereby "inherently" depriving them of the rights guaranteed in Article XIV, section 4.  It appears that he interprets Article XIV, section 4 as a constitutional mandate that the workers' compensation system operate wholly without friction, such that the Legislature may not enact "any 'incumbrance of any character' to that medical treatment."

We are not persuaded. "Section 4 'affirms the legislative prerogative in the workers' compensation realm in broad and sweeping language' . . . . [Citation.]" (*Stevens*, *supra*, 241 Cal.App.4th at p. 1094.)  "[T]he notion that . . . Section 4 itself imposes separate restraints on the plenary powers it confers on the Legislature has been decidedly rejected." (*Ibid*.)  Likewise, the Legislature's broad power to regulate and enact limitations upon workers' compensation matters "has been repeatedly affirmed."

11

(*Ibid.* [collecting cases].)  Thus, "nearly *any* exercise of the Legislature's plenary powers over workers' compensation is permissible so long as the Legislature finds its action to be 'necessary to the effectiveness of the system of workers' compensation.'  (*Greener v. Workers' Comp. Appeals Bd.*, *supra*, 6 Cal.4th at p. 1038, fn. 8.)"  (*Stevens*, *supra*, 241 Cal.App.4th at p. 1095.)  "The California Constitution does not make a workers' right to benefits absolute" (*Rio Linda Union School District v. Workers' Compensation Appeals Board* (2005) 131 Cal.App.4th 517, 532), nor does it make lien claimants' rights to reimbursement absolute, as their rights arise out of and are derivative of the underlying workers' compensation claim (see *Perrillo v. Picco & Presley* (2007) 157 Cal.App.4th 914, 929).

Here, the Senate Rules Committee's analysis of SB 863 states that the lien system was "out of control" and could be reined in by "re-enact[ing] a filing fee, so that potential filers of frivolous liens have a disincentive to file."  (Sen. Rules Com., Off. of Senate Floor Analyses, analysis of Sen. Bill No. 863 (2011-2012 Reg. Sess.) as amended August 30, 2012, at p. 16.)  It further states that "lien abuse" commonly was perpetrated by "third parties [who] purchase old receivables from providers, who often billed at (higher) usual and customary rates but were properly paid according to established fee schedules.  These third parties then file liens in an effort to leverage settlements."  (*Ibid.*)  This legislative history shows that the Legislature enacted sections 4903.05 and 4903.8 to "provide a disincentive to file frivolous liens" that overcrowd the workers' compensation court system and delay the resolution of workers' cases.  (*Id.* at pp. 16-17.)  "[F]ar from conflicting with Section 4's mandate to provide substantial justice," the lien reforms implemented in sections 4903.05 and 4903.8 advance this goal by taking aim at problem liens that impede the functioning of the workers' compensation system.  (*Stevens*, *supra*, 241 Cal.App.4th at p. 1096.)  "It is not our place under the state Constitution to 'second-guess the wisdom of the Legislature' in making these determinations.  (*Facundo-Guerrero v. Workers' Comp. Appeals Bd.*, *supra*, 163 Cal.App.4th at p. 651 [ ].)" (*Stevens*, *supra*, 241 Cal.App.4th at p. 1096.)

12

## III. Right to Petition

Article I, section 3, subdivision (a) of the state Constitution provides "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good." (Cal. Const., Art. I, § 3, subd. (a).) Chorn contends the $150 lien filing fee imposed by section 4903.05 infringes the right to petition embodied in this provision because it "deliberately and disproportionately targets individual and small healthcare providers and expressly excludes large insurance interests." In his reply, he further argues that the filing fee imposed by section 4903.05 infringes the right to petition because it "bears no relationship to the amount of the claim and is deliberately unreasonable." Additionally, Chorn argues that the filing fee serves an "illegitimate government interest—the deprivation of access to the workers' compensation adjudication system and the resultant lack of access to medical care for injured workers." These arguments, which are largely unsupported by citation to authorities, are not persuasive.

"The right to petition for redress of grievances is the right to complain about and complain to the government." (*Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 51.) "The right includes the right to petition the executive or legislative branches directly" and also encompasses "the right to petition the judicial branch for resolution of legal disputes." (*Vargas v. City of Salinas* (2011) 200 Cal.App.4th 1331, 1342.) "[T]he right to petition has never been absolute," however. (*Wolfgram*, *supra*, 53 Cal.App.4th at p. 56.) Just as federal courts have recognized that "reasonable costs may be imposed on persons who want to sue" without violating the federal constitutional right to petition (*Lumbert v. Illinois Department of Corrections* (7th Cir. 1987) 827 F.2d 257, 259), California state courts have held that "[r]easonable, narrowly drawn restrictions designed to prevent abuse of the right can be valid" under the state Constitution (*Vargas v. City of Salinas*, *supra*, 200 Cal.App.4th at p. 1342; see also *Wolfgram*, *supra*, 53 Cal.App.4th at p. 57; *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 196). A corollary of this holding is that "[t]he general right of persons to file lawsuits—even suits against the

government—does not confer the right to clog the court system and impair everyone else's right to seek justice." (*Wolfgram*, *supra*, 53 Cal.App.4th at p. 56.)

Assuming, as the parties do, that the right to petition encompasses the filing of a lien in WCAB proceedings (see *Angelotti Chiropractic, Inc. v. Baker* (9th Cir. 2015) 791 F.3d 1075, 1082 (*Angelotti*) [liens are derivative of workers' rights and, like those rights, do not vest until final judgment]), we conclude that the $150 lien filing fee imposed by section 4903.05 is a valid restriction on the right to petition. The filing fee was enacted to combat "lien abuse" and improve the functioning of an "out of control" lien system. (Sen. Rules Com., Off. of Senate Floor Analyses, analysis of Sen. Bill No. 863 (2011-2012 Reg. Sess.) as amended August 30, 2012, at p. 16.) It was therefore by its very nature "designed to prevent abuse of the right" to petition. Chorn does not dispute this. Instead, he argues in essence that the filing fee is not narrowly drawn because it affects legitimate lien holders in addition to the lien abusers at which it was aimed.

"[T]he decision how broadly and in what manner to attack perceived problems is for the elected branches in the first instance." (*California Grocers Association v. City of Los Angeles* (2011) 52 Cal.4th 177, 209.) The Legislature's decision to remediate the problems of lien abuse and backlogs in the workers' compensation system by imposing a filing fee on certain lien claimants was narrowly tailored to both problems. As we will discuss further when addressing Chorn's equal protection claims, "[t]argeting the biggest contributors to the backlog—an approach that is both incremental [citation] and focused on the group that 'most frequently' files liens [citation]" (*Angelotti*, *supra*, 791 F.3d at p. 1086)—is an appropriately narrow approach.

Additionally, pursuant to another provision enacted by SB 863, lien claimants are also entitled "to an order or award for reimbursement from the employer of a lien filing fee . . ., together with interest at the rate allowed on civil judgments," if they make a written settlement demand for a clearly stated sum and then prevail by obtaining an award for a sum equal to or greater than the amount demanded. (§ 4903.07, subd. (a).) The filing fee also may be reimbursed "pursuant to the express terms of an agreed disposition of a lien dispute." (§ 4903.07, subd. (b).) The availability of a mechanism

14

through which to obtain reimbursement of the filing fee mitigates the impact of section 4903.05 on individuals holding legitimate liens.

Chorn also contends that the lien filing fee is unreasonable because its amount is unrelated to the amount of the underlying claim. He represents that the $150 fee "generally exceeds the average cost of most medical care," which he estimates at "less than $100." Chorn did not include in the record any evidence supporting these assertions, although he requested at oral argument that we take judicial notice of the "Official Medical Fee Schedule" to which he vaguely refers in a footnote in his reply. We grant the belated request for judicial notice of the Official Medical Fee Schedule, which is codified in article 5.3, sections 9789.10 through 9789.111, of title 8 of the California Code of Regulations, (Evid. Code §§ 451, subd. (a), 459, subd. (a).) This complex series of regulations does nothing to support Chorn's assertions, however, as it provides no information regarding "the average cost of most medical care."

In any event, we are not persuaded that the fixed nature of the filing fee renders it inherently unreasonable and violative of Article I, section 3, subdivision (a). If that were the case, *any* fixed filing fee that applies to claims with a range of values, such as Government Code, section 70611, which imposes a "uniform fee for filing the first paper in a civil action or proceeding in the superior court," could not stand. (Cf. *Lumbert v. Illinois Department of Corrections*, *supra*, 827 F.2d at p. 259 ["But it is not true that placing any cost on the filing of litigation violates the Constitution. Otherwise all filing fees would be unconstitutional, which of course they are not."].)

## IV.    Due Process

Chorn contends he has "a constitutionally protected interest to recover the value of medical services provided in reliance upon the promise of fair adjudication and payment of liens before the WCAB," which section 4903.05 infringes by conditioning his pursuit of that interest upon payment of a filing fee. He further contends the filing fee "offends due process because it impairs workers' compensation applicants['] *access* to medical treatment for their workplace injuries." These contentions are not persuasive.

15

The due process clause of the California Constitution provides that "[a] person may not be deprived of life, liberty, or property without due process of law . . . ." (Cal. Const., art. I, § 7, subd. (a).) Analysis under this clause "differs from that conducted pursuant to the federal due process clause in that the claimant need not establish a property or liberty interest as a prerequisite to invoking due process protection." (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1069.) Although the aggrieved party need not establish a protected property interest, he or she "must nevertheless identify a statutorily conferred benefit or interest of which he or she has been deprived to trigger procedural due process under the California Constitution. . . ." (*Id.* at p. 1071.) "The 'requirement of a statutorily conferred benefit limits the universe of potential due process claims: presumably not every citizen adversely affected by governmental action can assert due process rights; identification of a statutory benefit subject to deprivation is a prerequisite.' [Citation.]" (*Ibid.*) The right to workers' compensation benefits is wholly statutory (*Graczyk v. Workers' Compensation Appeals Board* (1986) 184 Cal.App.3d 997, 1002), and, because lien claimants' rights to payment arise from the employee's right to compensation (*Perrillo v. Picco & Presley*, *supra*, 157 Cal.App.4th at p. 929), those rights too are statutory. Though such rights do not fully vest until they are reduced to final judgment (*Graczyk v. Workers' Compensation Appeals Board*, *supra*, 184 Cal.App.3d at p. 1006; *Angelotti*, *supra*, 791 F.3d at p. 1081), they nonetheless are conferred by statute and as such trigger a right to procedural due process under the state Constitution (see *Vacanti*, *supra*, 24 Cal.4th at p. 811 [lien claimants become parties in interest to WCAB proceedings and "receive[] full due process rights, including an opportunity to be heard"]). Yet because Chorn is not a workers' compensation applicant, he cannot assert due process rights in such applicants' access to treatment; we accordingly confine our analysis to his contention that his right to payment has been impaired.

"[T]he due process safeguards required for protection of an individual's statutory interests must be analyzed in the context of the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty. [Citation.] This

16

approach presumes that when an individual is subjected to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudicial decision-making and in being treated with respect and dignity. Accordingly, it places front and center the issue of critical concern, i.e., what procedural protections are warranted in light of governmental and private interests." (*People v. Ramirez* (1979) 25 Cal.3d 260, 268.) This approach also recognizes the flexible nature of the due process requirement, which calls only for such procedural requirements as the particular situation demands. (*Ibid.*) "[T]he extent to which due process relief will be available depends on a careful and clearly articulated balancing of the interests at stake in each context." (*Id.* at p. 269.) "More specifically, identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible government official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Ibid.*; see also *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.)

Balancing these interests leads us to conclude that the filing fee does not violate due process. The private interest claimed here is Chorn's right to receive payment for medical services rendered to workers' compensation applicants. This interest entitles Chorn to notice and an opportunity to be heard. (*Vacanti*, *supra*, 24 Cal.4th at p. 811; *Beverly Hills Multispecialty Group, Inc. v. Workers' Compensation Appeals Board* (1994) 26 Cal.App.4th 789, 803-804.) Chorn argues that the lien filing fee imposed by section 4903.05 impermissibly precludes him from participating in WCAB proceedings and therefore precludes him from receiving payments he is owed. However, liens are not the only means by which medical providers may receive payment. Just as individuals seeking bankruptcy protection may be subject to filing fees because they may, "in theory,

17

and often in actuality," negotiate with creditors outside of the court system (*United States v. Kras* (1973) 409 U.S. 434, 445-446), medical providers like Chorn also may settle their bills outside of the legal system. Moreover, independent medical providers like Chorn are not required to treat workers' compensation applicants. These considerations render the risk of an erroneous deprivation of such interest less pressing than it otherwise would be. The substitute procedural safeguard Chorn implicitly suggests – the right to file liens before the WCAB free of charge – undeniably has a high value to lien claimants, but, as the legislative analysis and Liens Report demonstrate, comes at the significant cost of overburdening the entire workers' compensation system and delaying the administration of justice for all participants. The compromise effected by section 4903.05 – lien claimants must pay to file their liens, but may recoup their filing fees if they ultimately prevail – sufficiently protects the due process rights of lien claimants while serving the legitimate goal of deterring frivolous filings.

## V.    Equal Protection

Article I, section 7, subdivision (a) of the California Constitution entitles all person to equal protection of the laws. (Cal. Const., art. I, § 7, subd. (a).) Section 4903.05, subdivision (c)(7) exempts certain entities from paying the $150 lien filing fee. (§ 4903.05, subd. (c)(7).) Chorn argues this provision violates his equal protection rights because it "expressly exempts health care service plans, disability insurance companies, and health insurance companies from having to pay fees to preserve their claims." He contends that there is no rational basis for drawing a distinction between the exempt entities and other entities (like himself) that file medical liens. He further claims that "[t]here is no rational basis for treating injured workers' entitlement to payment of their medical expenses based on the happenstance of who is underwriting their medical care." We conclude that section 4903.05 does not violate the equal protection clause of the state Constitution.

Equal protection analysis under the state Constitution is substantially similar to that under the federal constitution. (*Garcia v. Four Points Sheraton LAX* (2010) 188 Cal.App.4th 364, 382.) Under both provisions, the equality guaranteed is equality under

18

the same conditions and among persons similarly situated. (*Adams v. Commission on Judicial Performance* (1994) 8 Cal.4th 630, 659.) "The Legislature may make reasonable classifications of persons and other activities, provided the classifications are based upon some legitimate object to be accomplished." (*Ibid.*) The United States Supreme Court "has long held that 'a classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.' [Citations.])" *Armour v. City of Indianapolis, Indiana* (2012) 132 S. Ct. 2073, 2080.)

Both parties recognize that the rational basis test governs our analysis here. We agree. The rational basis test applies to equal protection claims challenging economic and social welfare legislation under both the federal and state constitutions. (*Facundo-Guerrero*, *supra*, 163 Cal.App.4th at p. 655.) As the Ninth Circuit recently explained while considering the constitutionality of another statute enacted by SB 863, section 4903.06, which imposes a "lien activation fee" of $100 on medical liens filed prior to January 1, 2013, "it is well settled that equal protection challenges to economic legislation such as SB 863 are evaluated under rational basis review." (*Angelotti*, *supra*, 791 F.3d at p. 1085.)

The rational basis test is deferential. A statutory classification that neither demarcates by suspect class nor infringes upon fundamental constitutional rights satisfies the rational basis test if there is any reasonably conceivable state of facts that could provide a rational basis for distinguishing one group from another. (*Facundo-Guerrero*, *supra*, 163 Cal.App.4th at p. 655; see also *Angelotti*, *supra*, 791 F.3d at p. 1085.) "Could provide" is the operative phrase; so long as a plausible reason exists for the classification, our inquiry under the rational basis test comes to an end. (*Facundo-Guerrero*, *supra*, 163 Cal.App.4th at p. 655.) The reason need only be plausible and need not be supported by evidence or empirical data. (*FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 315; *Kimco Staffing Services v. State* (2015) 236 Cal.App.4th 875, 885.) "Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is

19

entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." (*FCC v. Beach Communications, Inc.*, *supra*, 508 U.S. at p. 315.) "The burden of demonstrating the invalidity of a legislative enactment under the rational basis standard rests squarely upon the party who assails it [citation], who must negate every 'reasonably conceivable state of facts that could provide a rational basis for the classification.' [Citation.]" (*Kimco Staffing Services, Inc. v. State*, *supra*, 236 Cal.App.4th at p. 885; see also *Facundo-Guerrero*, *supra*, 163 Cal.App.4th at p. 655.) Chorn has not carried that heavy burden here.

As the Ninth Circuit explained in *Angelotti*, "one 'plausible policy' goal . . . for the imposition of the lien activation fee is to help clear the lien backlog by forcing lienholders to consider whether a lien claim is sufficiently meritorious to justify spending $100 to save it from dismissal." (*Angelotti*, *supra*, 791 F.3d at p. 1085.) We find this goal plausible with regard to the $150 filing fee as well, as the legislative analysis submitted by respondent and real parties in interest states that the purpose of re-enacting the filing fee was to provide a disincentive for potential filers of frivolous liens. (Sen. Rules Com., Off. of Senate Floor Analyses, analysis of Sen. Bill No. 863 (2011-2012 Reg. Sess.) as amended August 30, 2012, at p. 16.) And just as the Ninth Circuit found the decision to apply the activation fee to some entities while exempting others (see § 4903.06, subd. (b) [exempting the same entities as § 4903.05, subd. (c)(7)]) was "rationally related to the goal of clearing the backlog because the Legislature might have rationally concluded that the non-exempt entities are primarily responsible for the backlog" (*Angelotti*, *supra*, 791 F.3d at p. 1085), so too was the Legislature's decision to apply the filing fee to select entities a rational one. As respondent and real parties point out, and as the Ninth Circuit stated in *Angelotti*, *supra*, 791 F.3d at p. 1085, a 2011 report by the California Commission on Health and Safety noted that ten of the eleven top electronic lien filers are independent medical providers (Cal. Com. on Health and Safety and Workers' Compensation, Liens Report (Jan. 5, 2011), Frequent Flyers, pp. 47-48). "Thus, the Legislature could have rationally found that independent service providers

20

bore primary responsibility for the lien backlog, and therefore elected to focus on those entities in imposing the activation fee." (*Angelotti*, *supra*, 791 F.3d at p. 1085.)

Moreover, "[t]he Legislature's approach also is consistent with the principle that 'the legislature must be allowed leeway to approach a perceived problem incrementally.' [Citation.]" (*Angelotti*, *supra*, 791 F.3d at p. 1085.) Compliance with the equal protection clause does not require the Legislature "to eliminate all evils in order to legislate against some." (*United States v. McDougherty* (9th Cir. 1990) 920 F.2d 569, 572.) "Countless constitutional precedents establish . . . that the equal protection clause does not prohibit a Legislature from implementing a reform measure 'one step at a time' [citation], or prevent it 'from striking the evil where it is felt most.' [Citation.]" (*American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 371.) The Legislature's decision to target the problem of lien abuse by implementing a filing fee applicable to the group of lien claimants that most frequently files liens is rationally related to a legitimate policy goal. Chorn's series of rhetorical questions probing the reasonableness of the decision is not sufficient to negate every 'reasonably conceivable state of facts that could provide a rational basis for the classification.' [Citation.]" (*Kimco Staffing Services, Inc. v. State*, *supra*, 236 Cal.App.4th at p. 885.)

## VI. Right to Contract

Chorn's final contention is that section 4903.8 impairs the obligation of contracts in violation of Article I, section 9 of the California Constitution by prohibiting payment of lien awards to anyone other than "the person who was entitled to payment for the expenses as provided in subdivision (b) of Section 4903 at the time the expenses were incurred, and not to an assignee unless the person has ceased doing business in the capacity held at the time the expenses were incurred and has assigned all right, title, and interest in the remaining accounts receivable to the assignee." (§ 4903.8, subd. (a)(1).) Chorn contends this provision "has the result of canceling contractual agreements whereby medical providers have sold their accounts receivable on an ongoing basis" and further "has the chilling effect of preventing any future assignments if the would be

21

assignor chooses to stay in business." We agree with respondent and real parties in interest that section 4903.8 does not unconstitutionally impair the obligation of contracts.

Article I, section 9 of the state Constitution prohibits the passage of any "law impairing the obligation of contracts." (Cal. Const., art. I, § 9.) This contracts clause limits the state's power to modify not only its own contracts with other parties but also its ability to modify contracts between other parties. (*Deputy Sheriffs' Association of San Diego County v. County of San Diego* (2015) 233 Cal.App.4th 573, 578.) It has long been settled, however, that the contracts clause does not absolutely bar all impairments. (*Fourth La Costa Condominium Owners Association v. Seith* (2008) 159 Cal.App.4th 563, 584.) As is particularly relevant here, the contracts clause protects only vested contractual rights. (*Welfare Rights v. Frank* (1994) 25 Cal.App.4th 415, 423.) Thus, Chorn's contention that section 4903.8, subdivision (a)(1) has a "chilling effect" on future assignments is not a cognizable constitutional claim. Since no vested contractual rights are involved in assignment contracts that do not yet exist, the contract clause is "simply not implicated." (*Welfare Rights v. Frank, supra*, 25 Cal.App.4th at p. 424.)

Subdivision (a)(2) of section 4903.8 clarifies that subdivision (a)(1) "does not apply to an assignment that was completed prior to January 1, 2013, or that was required by a contract that became enforceable and irrevocable prior to January 1, 2013." (§ 4903.8, subd. (a)(2).) Section 4903.8, subdivision (a)(1) therefore does not impair any assignments Chorn finalized prior to January 1, 2013. Chorn avers, however, without citation to any factual record, that he has "long-term master contracts" that "require a new bill of sale for each group of receivables sold." He contends that these contracts have been impermissibly impaired by section 4903.8, subdivision (a)(1). If, as Chorn suggests, he was obligated to make these alleged assignments prior to January 1, 2013, there is no constitutional violation because subdivision (a)(1) of section 4903.8 does not apply. If Chorn was not obligated to make the alleged assignments prior to January 1, 2013, then there was no contractual obligation to be impaired at the time section 4903.8, subdivision (a)(1) took effect. Either way, there is no violation of the contracts clause.

22

## DISPOSITION

The petition is dismissed as to petitioners Kalestian, Vounov, and Buie and denied as to petitioner Chorn. Respondent and real parties in interest are to recover their costs in this proceeding.

**CERTIFIED FOR PUBLICATION**


COLLINS, J.

We concur:



EPSTEIN, P. J.



WILLHITE, J.

23