Filed 9/9/21  Pech v. Moghavem CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| RICHARD PECH, | B308593 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV18681) |
| v. | |
| AFSHIN MOGHAVEM, ET AL., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elaine Lu, Judge.  Reversed in part.

Richard Pech, in pro. per., for Plaintiff and Appellant.

Doniger / Burroughs, Stephen M. Doniger and Kelsey M. Schultz for Defendants and Respondents.

_____

Plaintiff and appellant attorney Richard Pech, in propria persona, appeals from part of an order granting a motion to

strike under Code of Civil Procedure section 425.16 (the anti-SLAPP statute)[1] in favor of defendants and respondents Afshin Moghavem, Afshin Moghavem, Inc. (AMI), and Prodigy Brands, LLC, (collectively "defendants") in this action based on an attorney fees agreement.  On appeal, Pech contends: (1) the anti-SLAPP motion should have been denied as to the cause of action for breach of contract because the defendants failed to identify specific allegations to be stricken; (2) the defendants' refusal to permit Pech to file a complaint on their behalf was not activity protected under the anti-SLAPP statute; and (3) the trial court erred by denying Pech's oral motion to amend the breach of contract cause of action.  We conclude the conduct alleged to have breached the parties' contract was not protected activity in furtherance of the defendants' right of petition or free speech. Because the anti-SLAPP statute does not apply, we reverse the portion of the order striking the breach of contract claim.

_____

[1] SLAPP is an acronym for "Strategic Lawsuits Against Public Participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn. 1.)  All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

## FACTUAL AND PROCEDURAL BACKGROUND

### Allegations of the Complaint

On May 15, 2020, Pech filed an action against Moghavem, AMI, Prodigy, and Doe defendants for fraud based on concealment and false promise, interference with contract, breach of contract, and quantum meruit. The complaint alleged the following facts: Moghavem contacted Pech in January 2019, seeking representation for a legal action against a third party. Pech conducted numerous meetings and reviewed hundreds of documents. On May 28, 2019, Pech entered into a written contingency fee agreement with the defendants. The agreement provided for a contingency fee between 15 and 45 percent based on the timing of the recovery. Pech would receive 15 percent of the recovery from the date of filing of the complaint until 60 days thereafter, limited to a maximum amount of $200,000. The defendants were obligated to pay all costs and disbursements advanced by Pech at the time of discharge.

Pech engaged in substantial research and drafted a complaint. A representative of the defendants provided comments and suggestions. The complaint included detailed text of messages between the parties in which the defendants provided information and directions to Pech for the complaint. On June 14, 2019, Pech sent a revised version of the complaint to the defendants, stating that he believed the complaint was sufficient to file. The representative for the defendants replied with additional comments and concerns. Pech provided a revised draft to the representative on June 27, 2019, stating that he would file the complaint later that day. Within minutes, the representative for the defendants replied, "Do NOT file the

Complaint. You may not do so until [Moghavem] authorizes you in writing to do so."

Pech suspected the defendants were negotiating compensation with the third party and repeatedly requested that Moghavem authorize him to file the complaint. In a telephone conversation, Moghavem said there was "a disconnect" in the direction of the case and he did not want to file the complaint. Moghavem denied negotiating with the third party and declined to explain how he intended to obtain the compensation owed to the defendants. He asked Pech to send a bill for his services. On July 3, 2019, Moghavem sent an email to Pech stating that the contingency fee agreement was terminated immediately. Pech believes the defendants negotiated a resolution for payment from the third party of the amount owed to them, but prevented Pech from filing the complaint on June 27, 2019, which would have entitled him to 15 percent of the recovery, up to $200,000.

The breach of contract cause of action alleged Pech performed each term of the contingency fee agreement, except as excused by the defendants' conduct. The defendants' conduct in preventing Pech from filing the complaint breached the implied covenant of good faith and fair dealing by intentionally frustrating Pech's rights under the agreement and depriving Pech of his fees and costs. As a result of the defendants' refusal to pay Pech's fees due under the agreement, Pech suffered damages of $200,000, plus interest.

## Anti-SLAPP Motion and Supporting Evidence

On July 13, 2020, the defendants filed an anti-SLAPP motion seeking to strike the complaint "in whole or in part." The defendants asserted that they did not enter into a settlement of their dispute with the third party, but simply selected different counsel to file a lawsuit on their behalf in an action that was ongoing. The defendants argued that Pech's claims were subject to the anti-SLAPP statute because they were based on protected activity. Specifically, the claims arose from conduct in furtherance of the defendants' rights of petition or free speech in the form of settlement negotiations and the instruction not to file the complaint that Pech drafted. The defendants identified the paragraph of the complaint that alleged they engaged in settlement negotiations and argued that each of the causes of action was based on their purported settlement negotiations, which was protected activity. The defendants also identified the specific paragraph of the complaint that alleged they instructed Pech not to file the complaint he had drafted. They argued that an attorney's ability to prosecute a client's claim extends only as far as the client grants authority, which authority may be revoked at any time. The instruction not to file a lawsuit was protected activity.

In addition, the defendants argued that Pech could not establish a probability of prevailing. They had not surreptitiously negotiated a settlement with the third party; there was no recovery upon which Pech could claim to have a lien. A different attorney filed an action against the third party on their behalf, which remained pending. The defendants sought attorney fees as the prevailing party on an anti-SLAPP motion.

The defendants submitted Moghavem's declaration in support of the anti-SLAPP motion. Moghavem declared that before he filed the complaint received from Pech, he decided to use the services of another attorney to prosecute the action against the third party. He instructed Pech not to file the complaint that Pech had prepared. The claims that the defendants had retained Pech to prosecute are currently the subject of a pending lawsuit filed by another attorney on their behalf. Between retaining Pech and filing the lawsuit, Moghavem did not engage in any substantive settlement negotiations with the third party, and no settlement has been reached.

**Opposition and Supporting Evidence**

Pech opposed the anti-SLAPP motion on August 28, 2020. Pech argued that his claims were not based on protected activity. He stated that the court must determine the gravamen of the complaint to assess whether it was based on protected activity. The gravamen of the complaint in this case was the failure to pay attorney fees pursuant to the written agreement for contingency and hourly fees. Specifically, the complaint alleged that the defendants breached the written agreement by preventing Pech from filing the complaint that he drafted. Failing to pay attorney fees owed under a fee agreement was not protected activity, or every claim to collect on an attorney fee agreement would be subject to an anti-SLAPP motion. Pech noted that he would delete the cause of action for fraudulent concealment in an amended complaint, based on facts that he had learned after filing the original complaint. The fraud causes of action were

6

ancillary to the claims for breach of contract and quantum meruit. Pech emphasized that under the cause of action for quantum meruit, the defendants were liable for unpaid fees and costs for the services that Pech rendered. Pech did not argue in his opposition that the anti-SLAPP motion was defective because it did not specifically identify allegations of protected activity that the defendants sought to have stricken.

Pech argued that he could meet his burden of proof to establish a probability of prevailing as well. Paragraph 7.2 of the fee agreement provided, "In addition, if Client discharges Attorney without cause, then Client's obligation to Attorney will be the greater of either the hourly rates listed in Paragraph 3.1, or the contingency fee as would be determined in Paragraph 4 and its subparagraphs, for all time spent in the Matter until the date of discharge." Pech argued that at a minimum, the defendants owed legal fees based on the hourly rates provided in the agreement. He noted that Moghavem had offered on several occasions to pay for the legal services that Pech had rendered.

Pech submitted a declaration and a supplemental declaration. He declared that the metadata for the complaint filed by different counsel for the defendants revealed the document was based on the complaint that Pech drafted. He attached his email communications with the defendants and stated that he had demanded payment. In response, the defendants' representative requested Pech's bills in order to provide payment. Prior to filing his complaint, Pech was unaware that the defendants had filed a complaint against the third party. He stated that he would delete allegations about a settlement between the defendants and the third party.

7

Pech attached the "Agreement for Contingency and Hourly Fee Legal Services" executed by the parties, as well as versions of the complaint that he drafted. He submitted a comparison document showing that certain material in the complaint that he drafted was identical to words, phrases, and sentences in the complaint that was filed, although the vast majority of the two documents was different. He also attached copies of his communications with the defendants, including a letter dated March 26, 2020, in which he demanded a wire transfer of $250,000 within a week, and multiple email messages from an intermediary requesting that Pech send bills showing the hours that he worked on the matter in order to negotiate payment from the defendants. Pech submitted letters that he sent to the third party, including copies of the complaint that was not filed, instructions to preserve evidence, and an invitation to contact him to discuss any aspect of the letter.

Pech submitted a letter dated May 29, 2020, that he received from the defendants' new counsel, informing Pech that the defendants' claims against the third party had not settled and were in litigation. The new counsel stated his clients claimed that Pech had been asked to provide the bills for his services on multiple occasions and Pech had never provided his bills. If that was incorrect, counsel asked Pech to send a copy of his bills. In addition, counsel expressed deep concern that Pech had included substantial attorney-client communications in a public filing that could prove harmful to the defendants' case against the third party. He requested Pech confirm that he had taken steps to have the complaint filed under seal to protect the client communications. If Pech refused, the defendants would seek ex parte relief.

## Reply and Trial Court Ruling

The defendants filed a reply. They argued that the gravamen of Pech's complaint was the defendants' protected activity in the selection of a lawyer and litigation choices. They noted the evidence was undisputed that the defendants asked Pech for a billing statement. Even in opposition to the anti-SLAPP motion, Pech had not submitted a billing statement. He could not withhold his billing statement, then institute a lawsuit asserting nonpayment. Pech had also not shown that he could support his claims for fraud or interference with contract.

A hearing was held on September 11, 2020. No reporter's transcript of the hearing has been included in the record on appeal. The trial court took the matter under submission. On September 30, 2020, the trial court issued an order granting the anti-SLAPP motion in part. The trial court granted the motion as to the cause of action for interference with contract without leave to amend. The court determined that the complaint alleged the defendants had interfered with the contract by preventing Pech from filing the complaint on their behalf. The trial court reasoned that since filing a complaint is an act in furtherance of the right to petition, by analogy, controlling the claims asserted through litigation by instructing counsel not to file a complaint at a certain time was in furtherance of the right to petition. Pech had not demonstrated that the claim had minimal merit, because the defendants, as signatories to the contract, could not be liable for interference with the contract as a matter of law.

The trial court also granted the motion as to the cause of action for breach of contract without leave to amend. The court found there were no allegations that the defendants breached any

9

express term of the contract. Instead, the cause of action asserted a claim for breach of the implied covenant of good faith and fair dealing. The allegation that the defendants stopped and prevented Pech from filing the compliant met the requirement of frustrating Pech's right to receive benefits under the agreement. Therefore, the gravamen of the breach of contract claim was the defendants' acts in preventing Pech from filing the complaint, which the court had already determined to be protected activity. Pech also failed to show any minimal merit to his claim to have suffered damages as a result of breach of the contract. There was no evidence that the defendants negotiated a resolution of their litigation with the third party. Pech's entitlement to a contingency fee had not vested because the defendants had not received any recovery.

The court denied the anti-SLAPP motion as to the remaining causes of action. With respect to fraud based on concealment, the court found the gravamen of the claims was the defendants' concealment of settlement negotiations, rather than the defendants' participation in settlement negotiations. Therefore, the claim was not based on protected activity.

The court concluded that Pech's cause of action for fraud based on a false promise alleged two separate false promises: a promise to pay Pech on an hourly or contingent basis, and a promise to file a complaint against a third party. The first promise did not implicate participation in settlement negotiations or the defendants' decision not to institute litigation, and was therefore not protected activity. The court found the fact that the second promise involved filing a complaint did not alter the nature of the claim, which was based on making a false promise, and therefore, the claim based on promising to file a complaint

10

was also not based on protected activity. Even if the promise to file a complaint was protected activity, however, the court lacked authority to strike the allegations about the second promise because defendants had not specifically identified these allegations of protected activity as the subject of the motion to strike as required to strike allegations of a "mixed cause of action" under *Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*). Pech's quantum meruit claim was not based on the purported settlement negotiations or the decision not to initiate litigation by filing the complaint prepared by Pech.

The court noted that at the hearing on the anti-SLAPP motion, Pech requested leave to amend the breach of contract action for the first time. The court denied the request based on the applicable case law. Pech filed a timely notice of appeal.

## DISCUSSION

Pech's complaint alleged that the defendants' conduct in preventing Pech from filing a complaint breached the implied covenant of good faith and fair dealing in the parties' fee agreement. On appeal, Pech contends that the defendants' right to control their litigation activities by preventing him from filing the complaint is not activity protected by the anti-SLAPP statute. We agree.

### A. Statutory Scheme and Standard of Review

The Legislature enacted the anti-SLAPP statute to protect defendants from meritless lawsuits brought primarily for the purpose of chilling the exercise of the defendants' constitutional

11

rights to speak and petition on matters of public significance. (§ 425.16, subd. (a); *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008–1009 (*Bonni*).) To accomplish this purpose, the statute authorizes a special motion to strike a claim against a defendant "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"'Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. We have described this second step as a "summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed."' [Citation.] The grant or denial of an anti-SLAPP motion is reviewed de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 [(*Park*)].)" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

12

## B. Instruction Not to File Complaint

The first step of the anti-SLAPP analysis requires determining whether the breach of contract claim in this case arises from protected activity. "At this first step, courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' (*Park*, *supra*, 2 Cal.5th at p. 1063.) The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity. (*Wilson*[ v. *Cable News Network, Inc.* (2019)] 7 Cal.5th [871,] 884 [(*Wilson*)].)" (*Bonni*, *supra*, 11 Cal.5th at pp. 1009.)

The anti-SLAPP statute identifies four categories of protected activity: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) "We determine de novo whether any of the acts from which challenged claims arise are protected under these provisions. (*Wilson*, *supra*, 7 Cal.5th at p. 884.)" (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)

13

"'The right to petition for redress of grievances is the right to complain about and complain to the government.' [Citation.] 'The right includes the right to petition the executive or legislative branches directly' and also encompasses 'the right to petition the judicial branch for resolution of legal disputes.' [Citation.]" (*Chorn v. Workers' Comp. Appeals Bd.* (2016) 245 Cal.App.4th 1370, 1385 (*Chorn*).) "The constitutional right of petition encompasses ""the basic act of filing litigation."" [Citation.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90.)

We conclude that the conduct alleged to give rise to liability in this case is not protected speech or petitioning activity. Pech alleged the defendants breached the fee agreement by preventing him from filing the complaint that he had drafted on their behalf. The anti-SLAPP statute protects a defendant's exercise of the right of petition or speech, but here the defendants did not exercise their speech or petitioning rights in their dealings with Pech. In withholding the filing of a complaint, the defendants did not make a statement before a judicial body, in connection with an issue under review by a judicial body, or in a public forum. The instruction not to file the complaint was not conduct in furtherance of the exercise of their rights of petition or free speech. The defendants may have been entitled to control their litigation activities by instructing Pech not to file a lawsuit, but their instruction to refrain from filing the complaint did not exercise their right to petition. Therefore, the conduct at issue was not the type protected by the anti-SLAPP statute. The portion of the order granting the anti-SLAPP motion as to the cause of action for breach of contract must be reversed. Because we agree that the order must be reversed as to the breach of

14

contract cause of action, we need not address Pech's other contentions which challenge the same ruling. Pech has not raised any contention on appeal concerning the portion of the order striking his cause of action against his former clients for interference with contract, and therefore, that portion of the order must be affirmed.

In the respondents' brief, they contend the trial court should have granted the anti-SLAPP motion as to the fraud causes of action, but they did not file a cross-appeal. "As a general matter, "'a respondent who has not appealed from the judgment may not urge error on appeal.'" [Citation.] 'To obtain affirmative relief by way of appeal, respondents must themselves file a notice of appeal and become cross-appellants.'" (*Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 585.) Because the respondents did not file a cross-appeal from the trial court's order on the anti-SLAPP motion, they have forfeited their issues seeking affirmative relief.

## DISPOSITION

The portion of the September 30, 2020 order striking the cause of action for breach of contract is reversed and the remainder of the order is affirmed.  Appellant Richard Pech is awarded his costs on appeal.


MOOR, J.


We concur:


RUBIN, P.J.


KIM, J.